Albert MONREAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 701–96.

Court of Criminal Appeals of Texas, En Banc.

June 11, 1997.

Richard Lee Urban, San Antonio, for appellant.

Angela Moore, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

In this case we must determine whether the Fourth Court of Appeals erred in holding that appellant, Albert Monreal, had not demonstrated that his trial counsel had rendered ineffective assistance due to a conflict of interest.

### The Relevant Facts

In June 1991, the Bexar County grand jury indicted appellant in a single indictment for two felony offenses, aggravated sexual assault (count I) and indecency with a child (count II). See Tex. Penal Code §§ 21.11(a)(1) and 22.021(a)(1)(B)(i) & (2)(B). The grand jury alleged that the offenses had occurred on or about September 5, 1990. The grand jury also alleged, for punishment enhancement purposes, that appellant had been convicted previously for the felony offense of burglary of a building. See Tex. Penal Code § 12.42(c). In August 1992, the case was called for trial in the 227th District Court of Bexar County. Appellant waived a jury, and the case was tried to the court. The record reflects, in relevant part, that after the State rested and before the defense presented its evidence, the following transpired:

DEFENSE COUNSEL: Your Honor, I forgot to just go on record as to the plea negotiations that were rejected on June the 10th, 1992. I need to do that.

THE COURT: Put it in the record.

DEFENSE COUNSEL: Should I have Mr. Monreal affirm that?

THE COURT: Yes. All three of you.

\*    \*    \*    \*    \*    \*

DEFENSE COUNSEL: I'm B____ S____. I'm the court-appointed defense attorney. For purposes of perfecting the record as to my representation and prior plea negotiations, I'm going to ask Mr. Monreal some questions relating to the previous plea bargaining negotiations.

Mr. Monreal, in late May of 1992, do you recall contacting me by phone indicating you were, for lack of better words, fairly stressed out and anxious to get out—

A: Yes, I was very anxious.

Q: —out of jail? At that time, did you ask me to try to negotiate a plea bargain in your behalf?

A: Well, we had a misunderstanding, B____. We were supposed to have trial already, and I wanted to come to trial as soon as possible.

Q: Right. But in lieu [view?] of the fact that there had been two- and three-month

intervals between trial settings, did you not indicate that if I could get it reduced to something like eight years and getting rid of the aggravated and repeater counts, that you might consider the plea agreement?

A: Yes, I did.

Q: Okay. And did you not come to the courtroom of Master Andrew Carruthers, which was in this same building, on June the 10th, 1992? Do you recall that?

\*    \*    \*    \*    \*    \*

A: Yes.

Q: And at that time, were you told that an offer had been made by [the State] to reduce the offense to indecency with a child, dropping the aggravated portions and removing the repeater count?

A: Yes, ma'am.

Q: At that time, were you also told that you had probably already done enough time in the Bexar County Jail to have satisfied the sentence that was offered that day?

A: Yes, ma'am.

Q: And you did understand that you could have pled that day and gotten that plea bargain?

A: Yes, ma'am.

Q: And you rejected it?

A: Yes, ma'am.

Q: Okay. And why did you reject it?

A: I'm not guilty, so why should I?

DEFENSE COUNSEL: Okay. That's all, Your Honor.

At the conclusion of the guilt/innocence stage, the trial court judge found appellant guilty under both counts of the indictment. At the punishment stage, appellant pled "true" to the enhancement paragraph, and the judge assessed punishment at imprisonment for 99 years. On appeal, appellant argued, *inter alia*, that his trial counsel had rendered ineffective assistance, in violation of his right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.[1] More specifically, appellant, relying primarily upon *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), argued that his trial counsel had rendered ineffective assistance because she had been "burdened by an actual conflict of interest."[2] Appellant's argument proceeded as follows:

> . . . [Defense] counsel's purpose in questioning appellant about plea negotiations was to protect herself from a future habeas petition [alleging ineffective assistance of counsel]. [Defense] counsel, in attempting to protect herself, let inadmissible plea discussions and related statements into evidence before the trier of fact in violation of Rule 410 of the Texas Rules of Criminal Evidence.[3] [Defense] counsel protected herself at the expense of her client.

> . . . Appellant's defense was compromised when the trier of the fact [sic] learned he considered pleading guilty, was scared, and had a misunderstanding with

---

1. The Sixth Amendment right to the effective assistance of counsel in felony cases was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963).

2. In *Cuyler v. Sullivan*, a case involving an attorney conflict of interest arising out of multiple representation, the United States Supreme Court held that a defendant can establish a violation of his Sixth Amendment right to the effective assistance of counsel if he can show "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. at 350, 100 S.Ct. at 1719. Four years later, in *Strickland v. Washington*, 466 U.S. 668, 687–694, 104 S.Ct. 2052, 2064–2068, 80 L.Ed.2d 674 (1984), the Court held that for ineffective assistance claims not involving alleged conflicts of

interest, a defendant must usually show (1) that his counsel's performance fell below an objective standard of professional competence and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

3. Rule 410 provides in relevant part:

> Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

> \*    \*    \*    \*    \*    \*

> (3) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or a plea of nolo contendere or which result in a plea of guilty or a plea of nolo contendere later withdrawn. . . .

his own attorney. One of the most precious rights afforded a defendant is [the] right to be tried ... with the presumption of innocence fully intact. This presumption is lost when the trier of fact learns that a defendant considered pleading guilty.

\*       \*       \*       \*       \*       \*

Both elements of the presumed prejudice test mentioned in *Cuyler* ... were committed by appellant's counsel in that: (1) appellant's counsel actively represented a conflicting interest (counsel's personal need to protect herself versus appellant's right to a fair trial) and (2) an actual conflict of interest adversely affected counsel's performance (counsel let inadmissible evidence before the trier of fact).

\*       \*       \*       \*       \*       \*

The moment after the State rested its case is a critical moment for a defendant in a criminal trial. A defendant needs an advocate that will not place the advocate's interest above the defendant's interest. By protecting herself right after the State rested its case, [defense] counsel conveyed a message to the trier of fact that appellant was going to be found guilty.

Appellant's Original Appellate Brief at 5–8 (footnote added).

In its reply brief, the State argued, *inter alia,* that appellant had "misstat[ed]" the applicability of ... Rule 410" and that he "ha[d] not shown how the trial court's awareness that there had been a plea bargain negotiation [had] affected him in any way." State's Appellate Brief at 2–3. The State argued further that the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was the appropriate test for determining whether there had been ineffective assistance under the facts of this case—thereby implying that appellant had shown no actual conflict of interest [4]—and that appellant had not satisfied the *Strickland v. Washington* test.

The Fourth Court of Appeals accepted the State's argument and affirmed the judgment of the trial court. *Monreal v. State,* No. 04–

92–00481–CR   (Tex.App.—San   Antonio, March 9, 1994) (unpublished). The court of appeals, without mentioning *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, or deciding whether appellant's trial counsel actually had been burdened by a conflict of interest, analyzed appellant's ineffective assistance claim under the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The relevant part of the court of appeals' analysis was as follows:

... We address the first prong of the *Strickland* test. Was trial counsel's performance deficient? Initially, we note that counsel has a duty to communicate plea bargain offers to the client. Clearly, this was done. Appellant, however, appears to object to the timing of making the record which reflected the proper communication between counsel and appellant. Because counsel admittedly forgot to go on record before trial and, instead, went on record just after the State rested, appellant asserts his counsel protected herself at the expense of her client. Thus, appellant claims his counsel conveyed a message to the trier of fact that appellant was going to be found guilty, thus she violated the Texas Rules of Evidence.

\*       \*       \*       \*       \*       \*

... Appellant's testimony merely reflects that he considered a plea simply because of the unfortunate delay in his trial and because it would mean he would not have to sit in jail any longer. Appellant clearly reiterated his plea of not guilty when he testified that he rejected the plea offer limiting his incarceration to time served because he was not guilty. It hardly seems that the mere timing of entering appellant's testimony on the record constitutes ineffective assistance of counsel.

In addition, because the trier of fact was the judge and not the jury, does not mean that the trial court's role as administrator of the proceedings is abdicated. Rather, although the trier of fact, in the present case was also the administrator of the proceedings, the judge was aware of the

---

4.   See footnote two, *supra.*

strictly procedural necessity of officially going on the record. We find there was not a Rule 410 violation.... Because counsel's competence is presumed and appellant has not shown that his attorney's representation was unreasonable under professional norms ..., we do not find appellant [sic] counsel's assistance to be ineffective. Under the first prong of the *Strickland* test, we find appellant did not show his trial counsel's performance to be deficient. In any event, even if the performance of appellant's counsel was deficient, appellant has not shown how his counsel's performance prejudiced his defense.

*Monreal v. State,* slip op. at 7–9 (citations omitted).

Appellant then filed a petition for discretionary review, arguing that the court of appeals had failed to address his central argument, i.e., that he was entitled to relief under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, because his trial counsel had rendered ineffective assistance due to a conflict of interest. We granted appellant's petition under Texas Rule of Appellate Procedure 200(c)(6), vacated the judgment of the court of appeals, and remanded the case to that court "for the limited purpose of allowing that court to determine whether *Cuyler v. Sullivan* or *Strickland v. Washington* controls appellant's claim." *Monreal v. State,* No. 0457–94 (Tex.Crim.App.—March 15, 1995), slip op. at 7 (unpublished). See *Weatherford v. State,* 828 S.W.2d 12, 12–13 (Tex.Crim.App.1992). We explained that "[t]he proper role of the court of appeals was to either apply the *Cuyler* test or explain why the facts of this case were distinguishable from those in *Cuyler* and why the *Strickland* test established the proper standard." *Monreal v. State,* No. 0457–94 (Tex. Crim.App.), slip op. at 7.

On remand, the court of appeals, with one justice dissenting, again affirmed the judgment of the district court.[5] *Monreal v. State,* 923 S.W.2d 61 (Tex.App.—San Antonio 1996). The court of appeals, after discussing what it considered to be the relevant facts, held that appellant's trial counsel's interest in protecting herself from a future claim of ineffective assistance had not been "in direct and actual conflict with her duty to provide adequate representation to her client." *Id.* at 66. In other words, the court of appeals held that appellant had not demonstrated the existence of an actual conflict of interest. The court also held that "claims of ineffective assistance of counsel based upon a conflict of interest between [an] attorney's self-interest and his client's interest are controlled by the standards announced in *Strickland v. Washington* [and not *Cuyler v. Sullivan* ]." *Id.* The court cited *Beets v. Scott,* 65 F.3d 1258 (5th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996), as support for this second holding.[6] Finally, the court reaffirmed its previous holding that appellant had not demonstrated ineffective assistance under the two-prong *Strickland v. Washington* test.

Appellant then filed a second petition for discretionary review, arguing that the court of appeals had erred in all of its holdings. We granted appellant's petition under Texas Rule of Appellate Procedure 200(c)(5) to determine: (1) whether the court of appeals had erred in holding that appellant had not demonstrated the existence of an actual conflict of interest (ground for review number two); (2) whether, if there had been an actual conflict of interest, the court of appeals had erred in holding that the *Cuyler v. Sullivan* test was inapplicable to an ineffective assistance claim based upon an alleged conflict between an attorney's self-interest and his client's interest (ground for review num-

---

**5.** On remand, appellant filed a supplemental brief arguing that his trial counsel's questioning of him regarding the plea negotiations adversely affected his trial counsel's performance because such questioning elicited evidence that was inadmissible under Texas Rules of Criminal Evidence 403 and 503. The court of appeals, acting within its sound discretion, declined to address these new arguments. See *Rochelle v. State,* 791 S.W.2d 121, 124 (Tex.Crim.App.1990).

**6.** In *Beets v. Scott,* 65 F.3d at 1265, the United States Court of Appeals for the Fifth Circuit, sitting en banc, held that *"Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." See W. LaFave & J. Israel, *Criminal Procedure* § 11.9 (2nd ed.1992) (discussing various types of attorney conflicts of interest).

ber one); and (3) whether, if there had *not* been an actual conflict of interest, the court of appeals had erred in holding that appellant had not demonstrated ineffective assistance under the *Strickland v. Washington* test (ground for review number three). In this Court, the parties make essentially the same arguments that they made below.[7]

## Analysis

We address first the question whether the court of appeals erred in holding that appellant had not demonstrated the existence of an actual conflict of interest. To do that, we must first review the relevant law.

■■■ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The Sixth Amendment guarantees not just the right to counsel, but the right to the *reasonably effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. at 686, 104 S.Ct. at 2063–64. *Ineffective* assistance of counsel may result when an attorney labors under a conflict of interest. *Id.* at 692, 104 S.Ct. at 2067. In such a situation, counsel may breach the duty of loyalty, perhaps the most basic of counsel's duties. *Id.* A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan*, 446 U.S. at 348–350, 100 S.Ct. at 1718–1719. See also *Strickland v. Washington*, 466 U.S. at 687–694, 104 S.Ct. at 2064–2068. An "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest. *James v. State*, 763 S.W.2d 776, 779 (Tex.Crim.App. 1989).

■■■ Appellant argues that his trial counsel labored under an actual conflict of interest because she "actively represented a conflicting interest," namely, her "personal need to protect herself." Appellant argues further that his trial counsel impermissibly put her own interests ahead of his interest, and that the resulting adverse effect was the admission of "evidence" that was inadmissible under Rule 410.

We have held before that a defendant has the right to be informed of plea bargain offers and that defense counsel's failure to so inform his client constitutes ineffective assistance under the Sixth Amendment.[8] *Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex.Crim. App.1987). In addition, Rule 1.03(a) of the Texas Disciplinary Rules of Professional Conduct mandates that a lawyer keep his client "reasonably informed" of matters such as plea bargain offers. See Tex. Disciplinary R. Prof. Conduct 1.03 & comment 1 (1990). Therefore, to protect herself from a future claim of ineffective assistance, all that appellant's trial counsel needed to do was to put into the record the fact that she had informed appellant of the plea bargain offer and that he had rejected it. We know of no reason why the presentation of such information, even before the trier of fact, would have harmed appellant in any way or would have conflicted with his interest in a fair trial. Certainly, such "evidence" would not have been objectionable under Rule 410, even if such "evidence" had been offered "against" appellant. In their treatise on Texas evidence, Professors Goode, Wellborn, and Sharlot have explained:

> Both the civil and criminal rule protect plea discussion statements only if they were made "in the course of plea discussions with an attorney for the prosecuting authority." This language is copied from Federal Rule 410, which has a convoluted history. The present Federal Rule 410 is the third version of the rule. The original and second versions of the rule covered "statements made in connection with" the

---

7. To the extent appellant's arguments differ from those he made in the court of appeals on original submission, we will not consider them. See *Holland v. State*, 802 S.W.2d 696, 700–701 (Tex. Crim.App.1991); see also footnote five, *supra*.

8. Appellant has not shown that his trial counsel misunderstood this rule of law.

protected pleas and offers to plead. Some federal courts interpreted this language broadly and excluded statements made by defendants to individuals who lacked authority to negotiate pleas. Other courts interpreted the rule more narrowly, finding it applicable only to statements made in formal plea negotiations with a United States attorney or someone with express authority from the United States attorney. In 1980, the conflict was resolved when an amended Federal Rule 410 expressing the narrower view took effect. Federal Rule 410 now refers only to "plea discussions with an attorney for the prosecuting authority."

Given this background, the use of the same, more restrictive language in both the Texas civil and criminal rules strongly evinces an intent to confine the exclusionary scope of the rule. Thus, purported plea offers *or other statements to anyone other than an attorney for the prosecution, ..., are not covered by Rule 410,* regardless of what the defendant believed when he made the statement in question.

S. Goode, et al., *Guide to the Texas Rules of Evidence: Civil and Criminal* § 410.3 at 282 (2nd ed.1993) (emphasis added).

In short, it appears that appellant's trial counsel could have protected herself without compromising appellant's interest in a fair trial. Appellant's trial counsel was not required to make a choice between advancing her client's interest in a fair trial or advancing her own interest in avoiding a future claim of ineffective assistance. Thus, her personal interest did not actually conflict with appellant's interest. The fact that she was less than artful in executing her personal interest—by eliciting unnecessary, and potentially damaging, information before the trier of fact—did not create an actual conflict of interest where none otherwise existed. Thus, the court of appeals did not err in holding that appellant had not demonstrated the existence of an actual conflict of interest and that, therefore, the *Strickland v. Washington* test, rather than the *Cuyler v. Sullivan* test, governed appellant's claim of ineffective assistance. We overrule ground for review number two.

Given our disposition of ground for review number two, we need not determine whether the court of appeals erred in holding that the *Cuyler v. Sullivan* test was inapplicable to an ineffective assistance claim based upon an alleged conflict between an attorney's self-interest and his client's interest. We therefore dismiss ground for review number one. We also need not determine whether the court of appeals erred in holding that appellant had not demonstrated ineffective assistance under the *Strickland v. Washington* test. Our examination of the record reveals that the court of appeals applied the correct legal standard and considered the relevant factors. See *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992). We therefore dismiss ground for review number three.

Having found no reversible error, we AFFIRM the judgment of the court of appeals.

OVERSTREET, KELLER and WOMACK, JJ., concur in the result.

BAIRD, Judge, concurring and dissenting.

I dissent to the majority's conclusion there was not an actual conflict of interest. However, for the following reasons I join the judgment.

**I.**

After the prosecution rested its case-in-chief, counsel for appellant revealed the plea negotiations to the trier of fact, in this case the judge. Counsel made it clear that the plea negotiations were being revealed to protect herself from any possible future action by appellant.

DEFENSE COUNSEL: I'm Barbra Slavin. I'm the court-appointed defense attorney. *For purposes of perfecting the record as to my representation and prior plea negotiations, I'm going to ask Mr. Monreal some questions relating to the previous plea bargaining negotiations.*

Mr. Monreal, in late May of 1992, do you recall contacting me by phone indicating you were, for lack of better words, fairly stressed out and anxious to get out—

A: Yes, I was very anxious.

Q: —out of jail? At that time, did you ask me to try and negotiate a plea bargain in your behalf?

A: Well, we had a misunderstanding, Barbra. We were supposed to have trial already, and I wanted to come to trial as soon as possible.

Q: Right. But in lieu of the fact that there had been two and three month intervals between trial settings, did you not indicate that if I could get it reduced to something like eight years and getting rid of the aggravated and repeater counts, that you might consider the plea agreement?

A: Yes, I did.

Q: Okay. And did you not come to the courtroom of Master Andrew Carruthers, which was in this same building, on June the 10th, 1992? Do you recall that?

    *    *    *    *    *    *

A: Yes.

Q: And at that time, were you told that an offer had been made by [the State] to reduce the offense to indecency with a child, dropping the aggravated portions and removing the repeater count?

A: Yes, ma'am.

Q: And you did understand that you could have pled that day and gotten that plea bargain?

A: Yes, Ma'am.

By abandoning, in the middle of trial, the interests of her client to protect herself against some future action by appellant, counsel demonstrated an actual conflict of interest. To hold otherwise is sheer folly.

## II.

The question now becomes whether the standard of *Cuyler* or *Strickland* is appropriate in this case. *Cuyler*, traditionally, has been the standard in conflict of interest cases dealing with multiple representation. *See, James v. State,* 763 S.W.2d 776, 778 (Tex.Cr. App.1989); *and, Perillo v. State,* 758 S.W.2d 567, 569 (Tex.Cr.App.1988). In *Beets v. Collins,* 986 F.2d 1478, 1483 (5th Cir.1993), the Fifth Circuit stated, "although *Cuyler* involved a situation of multiple representation, the Court's opinion did not purport to limit its discussion of conflicts of interest to circumstances involving multiple representation." *Id.,* at 1483.[1]

In *Beets,* the Court was faced with an attorney who represented the defendant, and was a possible witness in her case. Beets alleged this was a conflict of interest under *Cuyler.* The Court discussed the differences between *Cuyler* and *Strickland:*

> ... *Cuyler* sets a lower threshold for a sixth amendment violation (the 'adverse effect' test) where, in the case of multiple representation, one cannot know for sure what tactical decision counsel would have made absent the conflicting duties to clients. *If the conflict existed only between the lawyer's self interest and the defendant's interest, however, the only relevant standard of harm is the effect of a decision on the defendant's case; that effect can be measured by Strickland's 'prejudice' standard.* The Supreme Court will have to sort out this quandary.

*Id.,* at 1484 (emphasis added). Finding the rationale of *Beets* persuasive, I would hold *Strickland* is the appropriate standard in the

---

1. This Court has recognized the *Cuyler* standard may be appropriate in a non-multiple representation case. In *Cantu v. State,* 930 S.W.2d 594, 599 (Tex.Cr.App.1996), in considering the representation of an attorney who had been suspended from the practice of law, we stated:

> Of course, the particular circumstances surrounding an attorney's suspension or disbarment may give rise to an actual conflict of interest. *See United States v. DeFalco,* 644 F.2d 132 (3rd Cir.1980) (counsel who committed a crime entered into a plea bargain with the same U.S. attorney's office and judge who participated in counsel's client's trial). However, such cases may generally be addressed under the standards formulated for conflicts of interest by the Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Costanzo,* 740 F.2d 251, 259 (3rd Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613

instant case.[2]

## III.

I would apply *Strickland* to the instant case in the following manner. The first prong of *Strickland* was met when trial counsel demonstrated an actual conflict of interest by abandoning the interests of her client to protect herself against some future action by appellant.[3] The effect of the conflict was

(1985); *Vance*, 64 F.3d at 124–125, *Mouzin*, 785 F.2d at 699.

2. In *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Cr.App.1986), the *Strickland* standard was adopted by this Court. A two-step analysis is required:

First, the reviewing court must decide whether trial counsel's performance failed to constitute "reasonably effective assistance." Stated differently, the question is whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. If counsel's performance fell below the objective standard, the reviewing court must undertake the second step of determining whether there is a "reasonable probability" the result of the trial would have been different but for counsel's deficient performance. A reasonable probability is a "probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Cr.App.1993).

See, *Austin v. State*, 934 S.W.2d 672, 675 (Tex.Cr. App.1996)

3. Every criminal defense attorney is aware of the possibility of a subsequent claim of ineffective assistance of counsel. In many cases these claims are not made until years after trial and appeal. Because of the awareness and delay, attorneys rightfully feel the necessity to document the effectiveness of their representation should a subsequent claim arise. There are many ways for this documentation to occur. Counsel could provide documentation by regular correspondence to the client notifying the client of the status of the case and the options available, and the responses from the client of which options to pursue. Or, counsel could prepare a statement, affidavit, recording or video tape, containing the actions taken by counsel and the reasons therefor and have the document signed, acknowledged, etc., by the client. If the documentation relates to the offer/acceptance of a plea bargain, this matter should be addressed when the plea bargain negotiations have broken down and the case is scheduled for trial. Moreover, these matters should never be made a part of the trial record. The discussions of whether to accept a plea bargain are confidential communication protected by the attorney/client privilege and, therefore, may not be disclosed to any third

to place before the fact finder evidence which is inadmissible under Tex.R.Crim.Evid. 410.[4]

Under the second prong, we must determine whether the conflict of interest undermines confidence in the outcome of the proceedings. In my opinion, the second prong is not met because the trial judge was the trier of fact. Trial judges are presumed to ignore inadmissible evidence. *Kimithi v. State*, 546

party, including the trial judge and/or court reporter, without the client's permission. Tex. R.Crim.Evid. 503; *Carmona v. State*, 941 S.W.2d 949 (Tex.Cr.App.1997).

In the instant case, had counsel documented her representation of appellant in any of the ways suggested above, she could have defended herself in the face of a subsequent ineffective assistance of counsel claim and the trier of fact would not have known appellant offered to plead guilty to a lesser included offense.

4. Rule 410 provides:

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty or nolo contendere which was later withdrawn;

(2) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding a plea of guilty or nolo contendere which was later withdrawn; or

(3) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or a plea of nolo contendere or which result in a plea of guilty or a plea of nolo contendere later withdrawn. However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it.

It is clear the exchange between appellant and Slavin was not admissible under Rule 410. The Fifth Circuit has established a two prong test to determine whether a discussion is a "plea negotiation" and therefore inadmissible under the rule: (1) whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion; and, (2) whether the accused's expectation was reasonable given the totality of the objective circumstances. *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978). Both prongs of this test have been met in the instant case. Therefore, the testimony elicited by appellant's counsel was expressly inadmissible before the fact finder.

S.W.2d 323, 327 (Tex.Cr.App.1977).[5] Additionally, trial judges understand a defendant may plead guilty for a reason other than guilt.

With these comments, I join only the judgment of the Court.

---

**5.** I am aware of our opinion in *Gipson v. State*, 844 S.W.2d 738 (Tex.Cr.App.1992), which held Tex. R. App. P. 81(b)(2) applies where the trial judge's judgment was based upon inadmissible evidence. However, the instant case is distinguishable because there is no showing the trial judge considered the inadmissible evidence in determining appellant's guilt or punishment whereas the trial judge in *Gipson* admitted she considered the inadmissible evidence. *Id.*, 844 S.W.2d at 741.