NO. 07-01-0065-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 20, 2001
_____

GERARDO RAMIREZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-99D-039; HON. DAVID WESLEY GULLEY, PRESIDING
_____

Before BOYD, C.J., QUINN and JOHNSON, JJ.

Gerardo Ramirez (appellant) appeals his conviction for aggravated assault with a deadly weapon. Via eight issues, he contends 1) the evidence was insufficient to support his conviction; 2) the trial court erred by not instructing the jury on accomplice-witness-testimony; and 3) his trial counsel was ineffective. For the following reasons, we affirm the judgment.

### Background

In March of 1999, appellant along with Manuel Victor Rivas (Rivas) and Moyceis Lamas (Lamas) drove to an acquaintance's house where several people were standing in the front yard, talking. The three men were looking for Sergio Rodriguez (Sergio), the victim in this case. Appellant and the other two men were directed to Sergio's location, and they left to find him. They subsequently located Sergio and asked that he return with them to the acquaintance's house, which he did. At the house, a fight ensued between appellant and Sergio. Appellant, then, drove off. While in the car, Rivas suggested to appellant that they get a shotgun to shoot the individuals at the house. Pursuant to this suggestion, the group drove to the home of Troy House (House), where they encountered Augustina Mendoza (Mendoza) and Julian Ybarra (Ybarra), and obtained a shotgun. Thereafter, appellant, Rivas, Lamas and Ybarra got into the vehicle and drove back to the house where the fight had occurred.

As the group approached, appellant placed the shotgun on his knees and aimed it out of the car window. Sergio and others were standing out in the yard as appellant began firing. Sergio was hit twice. Those in the vehicle then left the scene.

The State subsequently indicted appellant for aggravated assault, alleging that he "Julio Ybarra, Victor Manuel Rivas . . . Troy House and Augustina Mendoza . . . did then and there intentionally, knowingly, and recklessly cause serious bodily injury to Sergio Rodriguez, by shooting him with a firearm, a deadly weapon." Upon trial by jury, appellant was convicted of the charge.

2

## *Legal and Factual Sufficiency*

Through issues one and two, appellant contends that the evidence was insufficient to support his conviction.[1] This is allegedly so because the State failed to prove the offense as charged in the indictment, and the jury failed to convict him for the offense described in that charging instrument. That is, through the charging instrument, the State accused appellant, Ybarra, Rivas, House and Mendoza of committing the assault. However, at trial, only Rivas and appellant were mentioned as the culprits, while in the charge given to the jury during the guilt / innocense phase of the case only appellant was named as the accused. Because of this, the jury's verdict could not have encompassed the offense as expressed in the indictment, according to appellant. We overrule the point.

In effect, appellant claims that the evidence was insufficient because there was a variance between the accusation in the indictment and the offense described in the jury charge. However, he neither argues nor attempts to prove that the variance prejudiced him in any material way, as required by authority. *See Santana v. State*, No. 1780-00, p.12 (Tex. Crim. App. October 31, 2001).

Moreover, as alleged in the indictment and described in the jury charge, the accusations incorporated the elements of aggravated assault as defined in §22.02 of the Texas Penal Code. The inclusion of the names of other defendants in the indictment was

---

[1]Even though appellant identifies his first two issues as pertaining to the legal and factual sufficiency of the evidence, we find his argument encompasses legal sufficiency only, therefore we only address whether the evidence was legally sufficient.

3

unnecessary to aver a crime under that statute.[2]  And, the accusations as described in both the indictment and jury charge encompassed the same elemental facts illustrating the same criminal act occurring on the same day and involving the same named victim.  Given this, one can reasonably conclude that the indictment not only informed appellant of the accusation against him in a manner sufficient to enable him to prepare a defense but also that the inclusion of the names of four other co-defendants in the instrument did not subject appellant to the risk of another prosecution for the same crime.  *See Golihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (holding that a variance is not material or fatal when the indictment informed the defendant of the charge sufficiently to allow him to prepare a defense and when it would not subject the defendant to the risk of being prosecuted later for the same crime).  Consequently, the variance in question was not material.  Nor was the evidence presented at trial legally insufficient to support conviction for aggravated assault.

### *Accomplice-Witness Rule*

Next, appellant contends that the trial court erred in failing to instruct the jury on the accomplice witness rule since one or more accomplices appeared and testified against appellant.  The State concedes that such an instruction should have been provided to the

---

[2]One commits assault when he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. §22.01(a)(1) (Vernon Supp. 2001).  One commits aggravated assault when he commits assault under §22.01 and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of an assault. *Id.* at §22.02(a) & (b).  Here, the indictment read that appellant and four other named individuals "did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Sergio Rodriguez, by shooting him with a firearm, a deadly weapon."  Furthermore, through the charge, the jurors were told that they could convict appellant if they concluded, beyond reasonable doubt, that he "did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Sergio Rodriguez, by shooting him with a firearm, a deadly weapon."

jury.  However, neither the State nor appellant requested same.  So, to warrant reversal, the record must show that the error caused appellant egregious harm.  *Hutch v.  State*, 922 S.W.2d 166, 170-71 (Tex. Crim. App.  1996); *Almanza v.  State*, 686 S.W.2d 157, 171 (Tex. Crim. App.  1984).  It does not.

The accomplice witness rule obligated the trial court to inform the jury that a conviction cannot be based upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon Supp. 2001).  The record before us is replete with evidence connecting appellant to the aggravated assault.  Indeed, appellant himself testified that he held and fired the gun in the direction of Sergio Rodriguez, though allegedly in self-defense.  Given appellant's own admission which indisputably tied him to the assault, the failure to direct the jury to find evidence connecting appellant to the crime (in addition to that proffered by the accomplices) did not egregiously harm him.

### Ineffective Assistance of Counsel

Finally, appellant claims that his trial counsel was ineffective.  This was allegedly so because counsel represented both appellant and co-defendant Rivas at trial, which joint representation created a conflict of interest.  We overrule the point.

While representation of multiple defendants in the same suit may result in the denial of effective counsel, multiple representation does not *per se* equate ineffective assistance. *James v. State*, 763 S.W.2d 776, 778 (Tex. Crim. App. 1989).  Moreover, when the appellant failed to object at trial to multiple representation, as appellant did here, it was incumbent upon him to show some actual, not speculative, conflict, *id.* at 778-79, that

5

adversely affected specific and material instances of counsel's performance.  *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997).  Finally, an actual conflict exists when counsel is required to make a choice between advancing appellant's interests in a fair trial or advancing those of the other client to the detriment of appellant's.  *Id.*

Here, appellant posited that a conflict arose when the prosecution tendered into evidence the statement of co-defendant Rivas. Therein, Rivas identified appellant as the one who fired the shotgun.  Thus, through the statement, appellant's co-defendant allegedly helped the State identify appellant as the shooter.  This could be of some import had no one else provided the same information.  Yet, as appellant acknowledged in his brief, various accomplice witnesses who were not being tried with appellant also identified appellant as the shooter.  More importantly, appellant himself stated that he was the one who discharged the firearm.  Given that Rivas statement was merely cumulative of other testimony, including that of appellant's, we cannot say that it somehow placed the co-defendants at odds with each other.[3]

Appellant also suggests that "the fact that co-defendant Rivas was tried in the same trial denied appellant his right to confront and cross-examine the witness."  How this created a conflict of interest goes unexplained.  Nevertheless, reason compels that before

---

[3] Appellant suggests that maybe appellant would not have admitted to firing the shotgun had counsel not represented Rivas.  Maybe so.  Maybe not.  Maybe this writer would have been a seven foot tall millionaire professional basketball player had he obeyed his mother and drank his milk when young.  Maybe appellant would have simply ignored the testimony of his alleged accomplices which identified him as the shooter.  Maybe if a hearing was held to garner evidence addressing appellant's claim of ineffectiveness, we would know one way or the other.  Yet, no such hearing was held.  Nor are we afforded Merlin's magic ball with which to peer into and devine what could have been.  Thus, we can only guess at what would have happened if the facts before us were not the facts before us.  And, guessing neither plays a part in nor provides basis for judicial decision making, though some may believe that is all we do.

6

the supposed inability to confront and cross-examine could be considered detrimental to appellant, there must be indication that confrontation and cross-examination would have garnered information beneficial to appellant. Yet, the latter does not offer explanation as to what that helpful information was, assuming *arguendo* that it even existed. Nor does he cite us to anything of record evincing what useful information could have been obtained through cross-examination. Consequently, we are being asked to act upon mere speculation, which we cannot do.

Appellant also argues that he and his co-defendant were placed "in an adversarial posture" because appellant testified that Rivas "lied in his statement" when examined by the State at trial. Yet, we were not cited, by appellant, to any portion of the record supporting this contention. Furthermore, it is not our duty to parse through the record to find basis for contentions offered by the litigants. That is the duty of the litigants. TEX. R. APP. PROC. 38.1(h). And, should they fail in that regard, they waive their contention. *Labrador Oil Co. v. Norton Drilling Co.*, 1 S.W.3d 795, 802-803 (Tex. App.--Amarillo 1999, no pet.).

Also, whether the supposed adversarial posture between appellant and Rivas adversely affected specific and material instances of counsel's performance also goes undeveloped. Rather, appellant merely concludes that it "must have," without offering any examples of when or how it did. Given this, we cannot say that he carried his burden as imposed by *Monreal*.

Accordingly, we affirm the judgment of the trial court

7

Brian Quinn
Justice

Do not publish.