**Opinion issued April 27, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00581-CR

————————————

**JONATHAN VASQUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1493087**

---

# O P I N I O N

Jonathan Vasquez appeals from his judgment of conviction for the offense of capital murder. In a single issue, Vasquez contends that we must reverse the trial court's judgment because he received ineffective assistance of counsel. We modify the judgment to correct an unraised error and affirm the judgment as modified.

**BACKGROUND**

A grand jury indicted Vasquez for capital murder. The indictment alleged that he fatally shot his victim during the commission of a robbery. *See* TEX. PENAL CODE § 19.03(a)(2). After a trial, the jury found Vasquez guilty as charged. As required by statute, the trial court assessed his punishment as a matter of law. *See id.* § 12.31(a) (requiring trial court to impose punishment of life or life without parole, depending on defendant's age at time of offense, when state does not seek death penalty).

Before trial began, and outside the presence of the jury, Vasquez's trial lawyer asked to put in the record the fact that he had engaged in unsuccessful pretrial negotiations with the state. The state proposed that Vasquez plead guilty in exchange for a punishment of 60 years of imprisonment. Vasquez rejected the proposal, and he acknowledged in open court that he had rejected it when the trial judge questioned him about the state's proposed plea bargain, his lawyer's communication of the proposal, and his rejection of the proposal. Vasquez's trial lawyer stated that his purpose in putting this information in the record was to avoid a future writ claiming there had been no plea negotiations, in the event that Vasquez should be found guilty.

During the process of putting the preceding information in the record, Vasquez's trial lawyer also disclosed some additional plea-related information. First, he stated that Vasquez had requested to review certain unspecified discovery materials and that counsel had provided them to Vasquez. According to Vasquez's

lawyer, Vasquez was as familiar with the information and evidence in the case as counsel and elected to proceed to trial rather than accept the plea bargain. Second, Vasquez's trial lawyer said he had considered approaching Vasquez's family about the case and the plea negotiations, and Vasquez made it clear that he did not want his lawyer or the lawyer's employees to discuss the case with his aunt or mother.

## DISCUSSION

On appeal, Vasquez contends that his trial lawyer created an actual conflict of interest between them by disclosing to the trial court and prosecutors confidential client information or attorney-client communications relating to plea negotiations, discovery, and the possibility of consulting his family members. Vasquez maintains that his lawyer made these disclosures to protect himself from a future ineffective-assistance claim and prioritized this interest over Vasquez's interest in a fair trial. This betrayal, Vasquez reasons, destroyed the trust needed for effective legal representation and thus is ineffective assistance of counsel in and of itself and in violation of his rights under the Sixth Amendment of the United States Constitution. Vasquez argues that he need not demonstrate any actual prejudice to the defense under these circumstances, which require reversal and remand for a new trial.

### Applicable Law

Usually, a defendant who seeks to prove ineffective assistance of counsel must satisfy the familiar two-prong test set forth by the United States Supreme Court

3

in *Strickland v. Washington*. *Acosta v. State*, 233 S.W.3d 349, 352 (Tex. Crim. App. 2007). Under this test, the defendant must demonstrate that his lawyer's performance was deficient under prevailing professional norms and actual prejudice to the defense. *Id.* But a different standard applies to actual conflicts of interest. *Id.* at 352–53. When a defendant asserts that ineffective assistance resulted from a conflict of interest, we instead apply the test articulated by the United States Supreme Court in *Cuyler v. Sullivan*. *Id.* Under that test, the defendant need only show that his trial lawyer actively represented conflicting interests and that his lawyer's performance at trial was adversely affected by the conflict. *Id.* at 353. That is, the defendant must show that an actual conflict of interest existed and that his lawyer acted on behalf of a conflicting interest during trial. *Id.* at 355–56. This test is less demanding than the usual one because the defendant need not demonstrate prejudice. *Id.* at 355.

An actual conflict of interest—as opposed to a possible or potential conflict of interest—exists if defense counsel must make a choice between advancing the defendant's interest in a fair trial or advancing another's interest, perhaps counsel's own interest, to the detriment of the defendant's interest in a fair trial. *Id.* Actual conflicts often arise when counsel represents codefendants but are not limited to such situations. *See id.* at 355–56. For example, in *Acosta*, the actual conflict at issue concerned counsel's divided loyalties between a defendant who counsel was representing in a prosecution for aggravated sexual assault of a child and the

4

defendant's wife who counsel was assisting in a factually related dispute with child protective services concerning custody of the same child. *See id.* at 350–52.

The Court of Criminal Appeals has unequivocally stated that a trial lawyer's own interest may constitute an actual conflict of interest for purposes of the *Cuyler v. Sullivan* test. *Id.* at 356. But the Court has expressly held that a trial lawyer does not create an actual conflict of interest between himself and his client by putting in the record that he engaged in plea negotiations on behalf of his client and that the client rejected a plea bargain. *Monreal v. State*, 947 S.W.2d 559, 565 (Tex. Crim. App. 1997). The Court reasoned that doing so does not create a conflict because making a record as to the existence of plea negotiations and the defendant's rejection of a proposed plea bargain does not require counsel to make a choice between advancing the defendant's interest in a fair trial and counsel's own interest in avoiding a future ineffective-assistance claim. *Id.* This remains true even when trial counsel is inartful and elicits unnecessary and potentially damaging information relating to plea negotiations before the trier of fact because the inartful disclosure of unnecessary information cannot create an actual conflict where none existed. *Id.*

When the defendant cannot show an actual conflict of interest on his lawyer's part, his ineffective-assistance claim is subject to the more demanding *Strickland v. Washington* test, which requires prejudice. *Acosta*, 233 S.W.3d at 352–53, 355–56.

**Analysis**

Vasquez acknowledges that *Monreal* is the Court of Criminal Appeals case that most closely resembles his on the facts and tacitly admits that *Monreal*'s holding hurts his position if it is applicable. But Vasquez argues that *Monreal* no longer correctly states the law because *Acosta* silently overruled *Monreal*. The crux of Vasquez's argument is that *Monreal* effectively still requires a showing of prejudice or harm, while *Acosta* correctly dispensed with any such requirement, because *Monreal* states that an actual conflict of interest involves situations in which a lawyer must choose between his client's and another's interests to the client's detriment.

We disagree. In *Monreal*, the Court of Criminal Appeals held the appellant's ineffective-assistance claim failed because he had not identified an actual conflict of interest on his lawyer's part. 947 S.W.2d at 565. Later, in *Acosta*, the Court did not disavow *Monreal*'s holding, despite discussing that holding at some length. 233 S.W.3d at 352–56. In fact, in *Acosta* the Court quoted *Monreal* as stating "the proper rule" for deciding whether an actual conflict of interest exists, namely, whether "counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Id.* at 355 (quoting *Monreal*, 947 S.W.2d at 564). In other words, *Acosta* hewed to the same standard as *Monreal* on this subject. To the extent there could be any doubt in this regard, a still later Court of Criminal Appeals decision,

6

*Odelugo v. State*, dispels this doubt by quoting *Acosta*'s quotation of *Monreal* on the subject of actual conflicts. *See* 443 S.W.3d 131, 136 & n.21 (Tex. Crim. App. 2014). In sum, *Acosta* did not silently overrule *Monreal*. *Acosta* embraced *Monreal*.

Our conclusion that *Monreal* continues to correctly state the law is reinforced by a recent Court of Criminal Appeals decision that issued after the parties briefed this appeal. In *Sandoval v. State*, the Court rejected another ineffective-assistance claim premised on counsel having created an actual conflict of interest by imparting confidential information to the trial court for the purpose of protecting themselves from future ineffective-assistance claims. No. AP-77,081, 2022 WL 17484313, at *6–7 (Tex. Crim. App. Dec. 7, 2022). The confidential information in question apparently related to disputes between counsel and the defendant about what witnesses should be called, what evidence should be presented, and whether counsel or the defendant should make these strategic choices. *See id.* Citing *Monreal*, the Court held that no actual conflict of interest existed between counsel and the defendant. *Id.* at *6. The Court reiterated *Monreal*'s observation that there remains no actual conflict even when counsel is inartful in making a record as to the assistance rendered to the client. *Id.* On this point, the Court elaborated that "ordinarily, an attorney's own interests in protecting against an ineffective assistance claim will not conflict with the client's interests. Overzealousness, mistakes, or malfeasance in protecting one's own interest in that regard is not sufficient to show

7

a conflict; there has to be a showing that the *interest* itself is antithetical to the client." *Id.* Thus, the Court's decision in *Sandoval* confirms that *Monreal* correctly states the law on conflicts of interest in the context of ineffective assistance of counsel.

In addition to arguing that *Monreal* does not correctly state the law, Vasquez argues that *Monreal* is factually distinguishable. In short, he argues that the defense lawyer in that case merely divulged the contents of plea discussions, whereas his own trial lawyer told the trial court and prosecutors about matters of trial strategy, specifically that Vasquez forbade his lawyers from speaking to his mother and aunt, who were potential witnesses or otherwise figured in the defense of the case.

We reject this argument. Even if *Monreal* could be distinguished on this basis, *Sandoval* forecloses this possibility. In *Sandoval*, the Court said that nothing about the facts of that case meaningfully distinguished it from *Monreal*. *Id.* Even though confidential information about matters of trial strategy were divulged by counsel in *Sandoval*, the Court held that *Monreal*'s holding remained just as applicable. *Id.*

Vasquez further argues that *Monreal*'s approach to actual conflicts of interest is incompatible with United States Supreme Court's decision in *Cuyler v. Sullivan*, which he says does not limit actual conflicts of interest to situations in which counsel must decide between advancing his client's interest in a fair trial or another's interest, perhaps counsel's own, to the detriment of his client's interest. To the extent Texas law requires such detriment, Vasquez says it improperly requires prejudice.

8

As an initial matter, this is not an argument we can decide in Vasquez's favor. Absent an intervening decision by the United States Supreme Court, we must follow the decisions of the Court of Criminal Appeals construing the scope of the constitutional right to effective assistance of counsel—even though the right derives from the Sixth Amendment to the United States Constitution—because that court's interpretations of the United States Constitution are binding on the courts of appeals. *See Purchase v. State*, 84 S.W.3d 696, 701 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (courts of appeals are bound by decisions of state's highest criminal court and cannot address whether one of that court's decisions is unconstitutional in some way). *Sandoval* was decided by the Court of Criminal Appeals mere months ago, *Sandoval* upholds and extends *Monreal*, and we are bound by these decisions.

But Vasquez is also mistaken in conflating *Monreal*'s requirement that an actual conflict be detrimental to the client's interest with a requirement that an actual conflict result in prejudice to the defense. When the Court of Criminal Appeals has stated that an actual conflict of interest exists if counsel must decide between advancing his client's interest in a fair trial or advancing another's interest, perhaps counsel's own, to the detriment of the client's interest, the Court did not mean that the conflict must actually result in harm or prejudice to the defense. Instead, the Court meant that the interests at issue must be antagonistic to the point of being mutually incompatible with one another, such that if counsel were to opt to advance

9

the other interest, he would necessarily have to abandon his client's interest in a fair trial. *See Sandoval*, 2022 WL 17484313, at \*6 (emphasizing that to show actual conflict of interest, defendant must show that competing interest is antithetical to his interest and thus impugns trial lawyer's ability to represent defendant at all). The point is not prejudice. Rather, the point is that the competing interests present counsel with the dilemma of standing for or against his own client. For example, an actual conflict of interest exists when counsel represents codefendants, and one defendant will be significantly aided by the introduction of probative evidence or statement of plausible arguments that impair the other defendant's cause. *Routier v. State*, 112 S.W.3d 554, 584 (Tex. Crim. App. 2003). It is in this sense that an actual conflict of interest exists when counsel must choose between his client's interest in a fair trial or another's interest to the detriment of the client's interest. Even if such a conflict does not prejudice the defense in the end—for example, because the evidence of guilt is overwhelming—it still constitutes an actual conflict of interest.

In sum, Vasquez cannot show the existence of an actual conflict of interest between him and his trial lawyer, based on his lawyer's disclosure of information relating to plea negotiations, because his lawyer's interest in avoiding a future ineffective-assistance claim is not antithetical to Vasquez's interest in a fair trial. For this reason, we hold that Vasquez's claim for ineffective assistance is meritless.

In addition, because Vasquez has not shown the existence of an actual conflict of interest, any ineffective-assistance claim he could assert based on his trial lawyer's disclosures about plea negotiations would have to satisfy the more demanding *Strickland v. Washington* test, which requires prejudice. *Acosta*, 233 S.W.3d at 352–53, 355–56. But Vasquez has not explained how his trial lawyer's actions prejudiced the defense at trial. Nor do we think he could do so. The guilt-innocence phase was tried to a jury, which was not present when Vasquez's trial lawyer discussed the plea negotiations with the trial court and prosecutors, and the punishment assessed was mandated by statute in this capital felony case. Thus, absent significant evidence to the contrary, counsel's disclosure of any confidential information relating to plea negotiations could not have harmed the defense. *See Sandoval*, 2022 WL 17484313, at *7 (noting that because jury was factfinder in guilt and punishment phases of capital case in which state sought death penalty, trial judge could receive confidential information without tainting factfinder's deliberations).

We overrule Vasquez's sole issue on appeal.

## Unraised Error in the Judgment

From the bench and in its judgment of conviction, the trial court assessed Vasquez's punishment at life imprisonment. This was error.

In a capital case, if the state seeks the death penalty, the only two punishments possible are death or life without parole. PENAL § 12.31(a). If, on the other hand, the

11

state does not seek the death penalty, then the only two punishments possible are life or life without parole; life is required when the defendant was younger than 18 years of age when he committed the offense, and life without parole is required when the defendant was 18 years of age or older when he committed the offense. *Id.*

The state did not seek the death penalty in this case.

The indictment alleges that Vasquez committed capital murder on or about December 22, 2015. At trial, this date was supported by the uncontradicted testimony of multiple witnesses. And the jury found Vasquez guilty as alleged in the indictment, with the jury charge specifying the offense date.

In addition, Vasquez testified without contradiction that he was born on August 6, 1994. Thus, the record shows he was 21 years old at the time of the murder. Because the state did not seek the death penalty and Vasquez was 18 years of age or older when he committed the murder, the trial court was required to assess his punishment at life without parole, not merely life. PENAL § 12.31(a).

When the record shows an indisputable error in the judgment that is readily correctable by reference to information within the record, the law authorizes us to modify the judgment and affirm as modified. TEX. R. APP. P. 43.2(b); *Van Flowers v. State*, 629 S.W.3d 707, 710–12 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We may do so on our own motion if the parties fail to raise such an error. *Edwards v. State*, 497 S.W.3d 147, 164 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

12

Other appellate courts have modified trial-court judgments when confronted with facially erroneous judgments assessing punishment at life, rather than life without parole, including when neither the state nor the defendant raised the error. *E.g.*, *Baker v. State*, No. 12-14-00185-CR, 2015 WL 3958107, at *7 (Tex. App.—Tyler June 30, 2015, pet. ref'd) (mem. op., not designated for publication); *Mitchell v. State*, No. 05-14-01423-CR, 2015 WL 3751777, at *6 (Tex. App.—Dallas June 16, 2015, no pet.) (mem. op., not designated for publication).

We will modify the judgment to reflect the punishment required by statute.

## CONCLUSION

We modify the trial court's judgment to reflect that Vasquez's punishment is life without parole, not life, and affirm the trial court's judgment as modified.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Publish. TEX. R. APP. P. 47.2(b).