Herman Nelson **NETHERY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–99–00239–CR.

Court of Appeals of Texas,
Dallas.

Aug. 4, 2000.

Rehearing Overruled Oct. 26, 2000.

---

Kenneth Jefferson Bray, Asst. Dist. Atty., Dallas, for State.

Before Justices KINKEADE, JAMES, and MALONEY.[1]

## OPINION

Opinion By Justice KINKEADE.

Herman Nethery appeals his conviction for engaging in organized criminal activity. A jury found Nethery guilty and assessed his punishment at thirty years' confinement in the state penitentiary and a $10,000 fine. In eleven points of error, Nethery argues: (1, 3) he received ineffective assistance of counsel; (2) he was denied the right to cross-examine the complainant; (4, 5, 6) the State failed to prove elements as alleged in the indictment; (7) the trial judge should have issued an acquittal when he heard Nethery's bill of exception; (8) the evidence was legally insufficient regarding corroboration of the accomplice witness testimony; (9) extraneous offenses were introduced in error; (10) he was prosecuted in violation of the double jeopardy clause; and (11) the punishment assessed was cruel and unusual. Although the evidence was legally sufficient, the accomplice testimony properly corroborated, and the double jeopardy claim waived, Nethery was denied effective assistance of trial counsel. Therefore, we reverse and remand for a new trial with new counsel.

### Factual Background

Nethery was a partner with Herman Gibbons in a landfill business in Dallas. Nethery owned the land on which the dump was operated. Nethery purchased the land in 1994 from a bank that had foreclosed on it. Terry Van Sickle, the previous owner, had also operated a landfill on that site. After purchasing it, Nethery obtained copies of a permit application and a certificate of occupancy for filling

Celia V. Barr, Law Office of John Holman Barr, Dallas, for Appellant.

1. The Honorable Frances J. Maloney, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

and mining the land, both in the name of "V.V. Construction Company," the company owned by Van Sickle. Nethery then had his secretary, Darbi Anderson (who is now his wife), file a new permit application for mining and filling the property under the name of "Herman Nethery Recycling." Anderson attached an affidavit she hand-wrote claiming V.V. Construction Company was still in business at that site and had continued to conduct business since the first certificates were issued in 1982. Nethery signed the affidavit as "V.V. Construction Co./Herman Nethery Recycling," and Anderson notarized it. The City of Dallas issued a certificate of occupancy to Nethery Recycling. Van Sickle testified Nethery was never an employee of V.V. Construction and the company had ceased doing business in 1987. Nowhere on either Van Sickle's or Nethery's certificate does it state the types of materials that may be accepted for dumping. The certificates only permit the mining and filling of the property. Nethery claimed the copies of the applications and the certificates constituted valid permits for his operation of the dump. We will refer to these papers as "alleged permits."

During the operation of this site, Nethery was issued numerous citations from the City of Dallas ("City") and the State for illegal dumping. John Dale, a member of the City's enforcement team against illegal dumping, issued many of these citations. Because of the illegal dumping, an injunction was issued on November 13, 1995, against Nethery's use of the property as a landfill. Despite the injunction, the site continued to operate and accept material. In February 1996, Stephen Moore, the complainant, inquired about buying the dump. Moore had no knowledge of the injunction. Gibbons showed Moore the alleged permits claiming they authorized the dump's operation. Although Moore did not purchase the site, he testified that, based on those alleged permits, he began using the landfill for his disposal company. He testified he would not have dumped materials there if he had known the proper permits had not been issued for the materials he was dumping.

Moore made several payments by check for the materials his company was dumping. These checks, totaling $125,590, were written between April and August 1996. Gibbons cashed some of these checks, giving Nethery his fifty percent, and Nethery cashed the others.

## Legal Sufficiency

In his fourth, fifth, and sixth points of error, Nethery contends the State failed to prove, respectively, the elements of deception, combination, and intent as alleged in the indictment.

Nethery was charged with engaging in organized criminal activity for the theft of $125,590 from Moore. The indictment alleges in pertinent part that Nethery:

> did, with the intent to establish, maintain, and participate in a combination and in the profits of a combination, pursuant to one scheme and continuing course of conduct, intentionally and knowingly, unlawfully appropriate property ... with the intent to deprive the owner, Stephen Moore, of said property, the aggregate value of which was $100,000 or more but less than $200,000, and without [his] effective consent, in that the defendant did induce consent by deception, i.e., the defendant did create and confirm by words and conduct a false impression of law and fact that was likely to affect the judgment of another in the transactions, and that [Nethery] did not believe to be true....

When reviewing legal sufficiency of the evidence, this Court looks to whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *Geesa v. State*, 820 S.W.2d 154, 155 (Tex.Crim.App.1991). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Bonham v. State*, 680

S.W.2d 815, 819 (Tex.Crim.App.1984). The jury is free to accept or reject all or any part of a witness's testimony. *Id; Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.-Dallas 1991, pet. ref'd). This Court only ensures the jury reached a rational conclusion and does not re-evaluate the weight and credibility of the evidence. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim.App.1993).

### 1. Deception

The Texas Penal Code defines "deception" as when a person, not believing it to be true, creates or confirms by words or conduct another's false impression of law or fact which is likely to affect the other's judgment in a transaction. *See* TEX. PEN. CODE ANN. § 31.01(1)(A) (Vernon Supp. 2000). According to the testimony of Katherine Stenzel, former team leader with the Texas Natural Resource and Conservation Commission, who also investigated Nethery's landfill operation, a landfill may accept inert fill without a permit; but, any other type of waste requires a permit. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.003(34) (Vernon Supp.2000). She testified that inert fill is anything that does not decompose, such as dirt, rock, sand, gravel, and concrete.

Nethery testified he knew the definition of inert fill from the outset of the dump's operation. Nethery also testified he knew no permit was needed to accept inert fill. However, Gibbons testified Nethery gave him copies of the alleged permits after Gibbons told Nethery the City had been issuing citations for illegal dumping. Gibbons testified he was instructed to show these alleged permits to anyone questioning the legality of the dump's operation. Nethery told Gibbons the previous owner had given him the alleged permits. Dale testified that prior to February 1996, he told both Nethery and Gibbons on numerous occasions the alleged permits were not permits and no permits were on record for that site. Despite these warnings from Dale, among others, there is no evidence in

the record that Nethery ever attempted to apply for the proper permits to continue the landfill's operation.

Nethery told Gibbons in February 1996 he could accept only materials allowed by the alleged permits. After Gibbons showed these alleged permits to Moore in February 1996, Moore's company disposed of construction rubble, including composition roof shingles, door frames, and pieces of wood, all non-inert materials. Moore testified the only waste his trucks did not dump at Nethery's site was residential wet garbage, hazardous waste, and medical waste. Moore testified he would not have dumped materials at that site if he had known the dump did not have the proper permits for the materials he was dumping.

█ The jury could infer from the testimony that the non-inert materials, such as wood and shingles, which were found at the site, made their way to the dump in Moore's trucks because he admitted dumping materials such as these items and because he relied on these alleged permits to do so. Furthermore, the jury had before it Dale's testimony that Nethery knew before February 1996 the alleged permits were not permits and there was no record of any permit. Although Nethery denied knowing the documents were not actually permits or knowing the previous owner had also been enjoined from using the site because of illegal dumping, witness credibility and the weight to be given to the testimony is within the purview of the jury. *See Bonham*, 680 S.W.2d at 819. The record supports the jury's conclusion that Nethery created or confirmed by his words or conduct, specifically his possession and use of the alleged permits, a false impression of law or fact to Moore that likely affected his judgment to dump non-inert materials at the site, and pay Nethery to be able do so, when Nethery knew the alleged permits were not actually permits. *See Sorce v. State*, 736 S.W.2d 851, 857 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd). Therefore, we conclude the evidence was legally sufficient to prove the

element of deception as alleged in the indictment. We overrule Nethery's fourth point of error.

## 2. Combination

 A defendant commits the offense of engaging in organized criminal activity if, intending to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the listed offenses, including theft. TEX. PEN.CODE ANN. § 71.02(a) (Vernon Supp.2000). A "combination" is defined as three or more persons who collaborate in carrying on criminal activities, although: (1) the participants may not know each other's identities; (2) membership may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations. TEX. PEN.CODE ANN. § 71.01(a) (Vernon Supp.2000). Because direct evidence is rarely available to prove the existence of an agreement, circumstantial evidence is sufficient and is almost always needed. *Carlson v. State*, 940 S.W.2d 776, 779 (Tex.App.-Austin 1997, pet. ref'd). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *McGee v. State*, 909 S.W.2d 516, 518 (Tex.App.-Tyler 1995, pet. ref'd).

 Moore testified Gibbons called him after the dump had been closed due to an injunction and told Moore the site had the proper permits. Based on this conversation, Moore resumed dumping materials at the site. Dale testified he told both Nethery and Gibbons on numerous occasions the alleged permits were not permits at all, and no permits were on record for this site. Although Nethery and Gibbons each testified they were not aware the alleged permits were not permits, the jury could have believed Dale's testimony that indeed Nethery and Gibbons were aware the alleged permits were not permits at all and intended to deceive customers with them,

resulting in the theft from Moore. *See* TEX. PEN.CODE ANN. § 71.02(a) (Vernon Supp.2000).

Anderson, Nethery's secretary, filed a permit application for a certificate of occupancy for Nethery for the site. Attached to the application was Anderson's affidavit stating that V.V. Construction was still doing business at the site and had been continuously doing so since 1982. Nethery signed it "V.V. Construction Co./Herman Nethery Recycling," and Anderson notarized it. Van Sickle testified Nethery was never an employee of his business and his business had ceased operating in 1987, seven years before Nethery purchased the land and filed the permit application. James Lindsay, president of First State Bank, testified that his bank foreclosed on the site when it was owned by Van Sickle. At the time, Lindsay was the loan officer in charge of the foreclosure and the person who sold the property to Nethery. Lindsay testified the property was in the bank's inventory from 1990 to 1994 and had not been in use during that time. The jury could have inferred from the testimony that Nethery and Anderson secured the certificate of occupancy by knowingly filing a false affidavit, and intended to present *the certificate to customers as the proper permit. See Carlson*, 940 S.W.2d at 779. It was for the jury to decide witness credibility and the weight to be given to the testimony. *See Bonham*, 680 S.W.2d at 819.

Gibbons showed the alleged permits to Moore in February 1996, telling him they authorized the operation of the landfill. Gibbons also called Moore after the dump had been shut down due to an injunction, asking Moore to return because they had the proper permits. Gibbons denied knowing the alleged permits were not permits at all. However, the jury could have believed Dale's testimony that Gibbons did know well before February 1996 that the alleged permits were not permits and no permits were on record. *See id.*

In addition to Nethery, Anderson, and Gibbons being involved, Gibbons's wife, Lilly, was the person in charge of accepting payments from customers. Moore testified his company made payments at the site when it dumped materials, including non-inert materials. Along with Nethery's, Anderson's, and Gibbons's actions, Lilly's action of accepting the payments is consistent with the realization of the group's goal of accepting money from customers for illegal dumping. *See McGee,* 909 S.W.2d at 516. The evidence was legally sufficient to prove the combination element, as Nethery, Anderson, Gibbons, and Lilly were all involved in this activity which resulted in the theft from Moore. We overrule Nethery's fifth point of error.

### 3. Intent

■ A person commits theft if he unlawfully appropriates the property of another with the intent to deprive the owner of the property. TEX. PEN.CODE ANN. § 31.03(a) (Vernon Supp.2000). Nethery admitted he knew a permit was needed for non-inert fill but none was needed to accept inert fill. Yet, even though he claimed the dump accepted only inert materials, he still gave copies of alleged permits, knowing they were not permits at all, to Gibbons to show anyone questioning the legality of the dump. In addition, photographs admitted into evidence show Nethery operating a large crane at the site from which he could have seen the non-inert materials for which he knew he had no permit. Gibbons testified Nethery also failed to tell Gibbons a permanent injunction had been issued against Nethery's use of the land as a dump site in November 1995. He continued to let Gibbons allow customers, including Moore, to dump materials there. Furthermore, Nethery continued to accept payments after November 1995 from Gibbons for Nethery's share of the profits from the dumping. Nethery himself cashed some of Moore's checks, which were payments for dumping materials. Because all of Moore's checks were written after April 1996, Nethery was clearly aware Moore was dumping materials after the injunction had been issued. Furthermore, according to Dale's testimony, Nethery knew the alleged permits were not permits and no permits were on record. After reviewing the record, we conclude the jury could have rationally found Nethery had the requisite intent. *See Geesa,* 820 S.W.2d at 155. Consequently, we overrule Nethery's sixth point of error.

### Accomplice Testimony

In his eighth point of error, Nethery complains the evidence was legally insufficient to corroborate the testimony of Gibbons, an accomplice witness. Section 31.03(c)(2) of the Texas Penal Code requires the State to corroborate the testimony of an accomplice with evidence which tends to connect the defendant to the crime; however, uncorroborated accomplice testimony may establish the defendant's knowledge or intent. TEX. PEN.CODE ANN. § 31.03(c)(2) (Vernon Supp.2000).

■ Nethery mistakenly argues a legal sufficiency review is the proper review for accomplice testimony. *See Cathey v. State,* 992 S.W.2d 460, 462–63 (Tex.Crim. App.1999). The proper review requires this Court to eliminate from consideration the accomplice witness testimony and then review the non-accomplice evidence to determine whether it tends to connect the defendant to the offense. *See Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim. App.1997). The non-accomplice evidence alone need not be sufficient to establish the defendant's guilt beyond a reasonable doubt, nor must it directly link him to the commission of the offense. *Id.* There need only be some non-accomplice evidence tending to connect the defendant to the crime. *Id.* Any independent evidence tending to verify an accomplice witness's version rather than the defendant's version is deemed to be corroborative, even if it goes only to "a mere 'detail'" versus a substantive connection between the defen-

dant and the offense. *Beathard v. State,* 767 S.W.2d 423, 430 (Tex.Crim.App.1989), *cert. denied,* 528 U.S. 954, 120 S.Ct. 380, 145 L.Ed.2d 296 (1999).

We conclude there is sufficient non-accomplice evidence tending to connect Nethery to the offense. *See Cathey,* 992 S.W.2d at 460. Photographs admitted into evidence show Nethery operating a crane at the landfill and show some of the materials dumped at the site, including non-inert materials. Stenzel also testified Nethery was seen at the site and non-inert fill was accepted there. The alleged permits on which Nethery and Gibbons relied were shown not to be permits at all. Although Nethery testified he knew no permit was needed to dump inert fill and claimed the dump accepted only inert materials, he provided Gibbons with copies of the alleged permits and continued to claim he had the proper permits to operate as he was. Dale testified he told Nethery several times these papers were not permits and did not authorize the dumping that was taking place. Furthermore, Nethery admitted he cashed checks written by Moore as payment for dumping that occurred after a permanent injunction had been issued against Nethery's use of the land as a dump. Therefore, we conclude the State met its burden of sufficiently corroborating Gibbons's accomplice witness testimony by offering evidence tending to connect Nethery to the offense. *See Hernandez,* 939 S.W.2d at 176. Also, the State was not required to corroborate Gibbons's testimony to establish Nethery's intent to commit the instant offense. *See* TEX. PEN.CODE ANN. § 31.03(c)(2) (Vernon Supp.2000). Consequently, we overrule Nethery's eighth point of error.

### Double Jeopardy

In his tenth point of error, Nethery argues he was tried in this criminal case in violation of the Fifth Amendment's prohibition against double jeopardy. Nethery contends he is being subjected to multiple punishments for the same offense because he was previously punished by $16 million in civil damages which were awarded against him, and was incarcerated for contempt for violating court orders to cease the landfill operation. Although there is some testimony in the record regarding the civil suit, the record contains no judgment reflecting the damages award.

Nethery failed to object at trial and, therefore, has waived any complaint on appeal regarding the civil judgment. *See Gonzalez v. State,* 8 S.W.3d 640, 645–46 (Tex.Crim.App.2000) (if the face of the record does not show a multiple punishment violation, a defendant who failed to object at trial waives right to complain of double jeopardy on appeal). Further, although the record contains the trial court's judgment of contempt, we conclude the double jeopardy clause is not implicated because the contempt proceeding related to a different offense containing different elements, *i.e.,* violating the court's temporary injunction prohibiting Nethery from accepting solid waste at his landfill, than the offense involved in this appeal, *i.e.,* engaging in organized criminal activity for the theft of money. *See State v. Marshall,* 814 S.W.2d 789, 791 (Tex. App.-Dallas 1991, pet. ref'd) (constitutional prohibition of double jeopardy protects, in part, against multiple punishments for the same offense). We overrule Nethery's tenth point of error.

### Ineffective Assistance of Counsel

In his first point of error, Nethery argues he was denied effective assistance of counsel at his criminal trial. Specifically, he argues his trial counsel, William Trantham, had an actual conflict of interest because, in addition to representing Nethery and his codefendant Gibbons, he represented Dale, a complaining witness in Nethery's civil trial, in a separate matter. Although Nethery's appellate brief asserts that Dale was a State's witness in the criminal trial, the record establishes that Dale was called by the defense, not the State.

In his third point of error, Nethery argues counsel was ineffective because his representation was objectively unreasonable and prejudiced Nethery's defense. Nethery points to four specific alleged acts or omissions: (1) Trantham failed to request a continuance when a lesser-included offense charge was added; (2) Trantham did not file a motion to transfer venue despite pretrial publicity; (3) Trantham called Dale as a witness, but knew or should have known Dale would only hurt Nethery's defense; and (4) Trantham did not file the motions, make the objections, or present the evidence a reasonably competent attorney would have.

### 1. Factual Background

In December 1994, when the City's enforcement team was at the dump site issuing more citations, Nethery alleged he was hit and injured by a City vehicle driven by Dale. Nethery retained Trantham's legal services for the purpose of suing Dale personally for injuries Nethery sustained in the accident. Trantham never filed suit against Dale personally, but claimed he did sue the City.

In October 1995, the City and the State sued Nethery in civil court for injunctive relief, damages, and penalties. They alleged Nethery did not have a permit to accept non-inert materials and was not in compliance with various city and state ordinances, rules, and regulations. Nethery again sought Trantham's legal services. During Nethery's civil trial, Dale was one of the complaining witnesses. As a result of the trial, Nethery was permanently enjoined from using the property, and was assessed statutory penalties of $15,000,060 and city fines of $1,068,000 (as established through testimony in the criminal trial). Trantham also represented Nethery's partner and co-defendant Gibbons during the civil proceeding. Although it is unclear from the record, at some point, Gibbons retained separate counsel.

After Nethery's civil trial ended, Trantham began representing Dale in criminal proceedings brought against him in an unrelated case for theft by a public servant. Trantham's representation of Dale began in February 1997 and had not concluded by December 1998.

The actual criminal jury trial against Nethery took place from October 26 to 30, 1998, and resulted in Nethery's guilty verdict. Trantham had filed a pretrial motion to withdraw as Nethery's attorney. The basis of the motion was that a second indictment had been filed against Nethery for which he had not retained Trantham. The motion referred only to Nethery's failure to hire Trantham regarding this second indictment. It did not mention any conflict of interest regarding Trantham's representation of Gibbons and/or Dale. Before opening arguments began, the trial court addressed Nethery's pretrial motions. At that time, Trantham mentioned to the trial court that Dale had been a complaining witness in Nethery's civil trial and was currently Trantham's client. When the trial court asked Trantham whether Dale's criminal case was related to Nethery's criminal case, Trantham answered, "Possibly tangentially, yes." The trial court denied all of Nethery's pretrial motions, including Trantham's motion to withdraw as attorney, and opening arguments began.

On December 18, 1998, the court held a hearing on Nethery's motion for new trial. Nethery had obtained new counsel and alleged in his motion he had received ineffective assistance of trial counsel. Nethery complained there were actual conflicts between Trantham's representation of Nethery and his representation of Gibbons and of Dale. Trantham testified during the hearing he did not represent Gibbons in the criminal trial, except possibly to help him obtain a bond setting. Trantham admitted neither Nethery nor Gibbons signed a waiver regarding potential conflicts from the dual representation in either the civil or criminal cases. Brook Busbee, Gibbons's criminal trial counsel, testified that when she took over Gibbons's

representation, she understood from her conversation with Trantham he had represented Gibbons in the criminal trial up to the point she began the representation. Trantham admitted both Dale and Nethery were his clients, but he could not remember whether his representation of Dale overlapped with Nethery's criminal trial. Trantham also testified that his obligation to Dale was on-going because Dale's case was on appeal at the time of the hearing and he was Dale's appellate attorney.

### 2. Applicable Law

The Sixth Amendment to the United States Constitution guarantees a defendant not only the right to counsel, but the right to the reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, an appellant must show (1) counsel's representation was deficient and (2) the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. In evaluating the first prong of the *Strickland* test, we presume counsel's competence and an appellant must rebut this strong presumption by proving the challenged action was not sound trial strategy. *See Johnston v. State*, 959 S.W.2d 230, 236 (Tex.App.-Dallas 1997, no pet.). " 'Judicial scrutiny of counsel's performance must be highly deferential.' " *Busby v. State*, 990 S.W.2d 263, 268 (Tex.Crim.App.1999) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052), *cert. denied*, 528 U.S. 1081, 120 S.Ct. 803, 145 L.Ed.2d 676 (2000). This presumption cannot be overcome without evidence in the record of the attorney's reasons for his conduct. *Id.* at 269. This Court will not second guess through hindsight the strategy of counsel at trial. *See Johnston*, 959 S.W.2d at 236. Moreover, the fact that another attorney, including appellate counsel, might have pursued a different course of action, does not necessarily indicate ineffective assistance. *Id.* at 237.

If an attorney was burdened by a conflict of interest, the defendant may have received ineffective assistance of counsel. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. When a conflict of interest is alleged, *Strickland* requires the appellant to show (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected counsel's performance. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997); *see also Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If an appellant shows an actual conflict, the second prong of *Strickland* is met because prejudice is presumed. *See Cuyler*, 446 U.S. at 345, 100 S.Ct. 1708. There is an "actual conflict of interest" when counsel must choose between advancing his client's interest or advancing other interests to the disadvantage of his client. *Monreal*, 947 S.W.2d at 564.

### 3. Application of the Law to the Facts

In part of his first point of error, Nethery complains Trantham was ineffective because an actual conflict existed between Trantham's representation of Nethery and his separate representation of Dale. *See id.* In part of point of error three, Nethery claims Trantham knew or should have known that calling Dale as a witness would only hurt Nethery's defense. After reviewing the record, we agree. The actual conflict is clearly evidenced in, among other things, the damaging testimony given by Dale, who was called as a defense witness. According to Dale's testimony, he was not involved with the landfill after mid-to-late 1995, months before Moore became involved with the site in February 1996. Looking at Dale's testimony on direct, Trantham appears to have been establishing that Nethery thought he had a permit to legally operate the dump the way he was. However, on cross-examination by the State, Dale testified that, through city records, he had access to the

permit history records. Dale checked these records and found no permit for that site. When Nethery first showed Dale the alleged permits, Dale informed Nethery the papers did not permit him to accept non-inert fill, they were not even permits, and the landfill had no permit on record. Despite Nethery's persistent claims on Dale's subsequent visits that the papers were permits, he never showed Dale anything other than those alleged permits.

Also on cross-examination, Dale testified Nethery was belligerent, threatened Dale, and tried to intimidate him. Dale testified that Nethery's accusations that Dale had hit him with a car were false, saying Nethery had "out and out lied." Dale then testified that Nethery operated the dump in the same manner, by lying to conduct his business. Dale said Nethery continued to accept non-inert materials despite numerous warnings and citations for violating city, state, and federal regulations and laws. Dale testified, "[Nethery] didn't mind lying to get it done," stating the driving force behind Nethery's actions was money. Dale also confirmed Nethery's statements made in a television news interview that millions of dollars were at stake and that this dump could bring in as much as $20,000 a day.

Trantham made no attempt to neutralize this damaging testimony. This in particular shows Trantham's performance was adversely affected by an actual conflict as he was faced with choosing between advancing Nethery's interests or advancing Dale's interests to Nethery's detriment. *See Monreal,* 947 S.W.2d at 564. Although Trantham's loyalty in Nethery's criminal case was supposed to be with Nethery, it is apparent to this Court that Trantham chose Dale's interests over Nethery's. Notwithstanding that we see no reason for calling Dale as a defense witness, Trantham should have attacked Dale as a witness, noting particularly that Dale had been fired from his position with the City and had no contact with either Nethery or the dump in 1996 when this offense occurred. Trantham had this information as a result of his representation of Dale.

The conflicts in this case abound: (1) Trantham was retained by Nethery to sue Dale personally for injuries he sustained when Dale allegedly hit Nethery with a car, but Trantham never sued Dale as Nethery requested; (2) Dale was a chief complaining witness in the civil trial against Nethery in which Nethery was assessed millions of dollars in fines; (3) Dale was called as a defense witness and gave damaging testimony to Nethery's defense during cross-examination by the State, which Trantham did not attempt to neutralize; and (4) Trantham's own testimony established he had an ongoing obligation to Dale at the time of Nethery's criminal trial due to Trantham's continuing representation of Dale in his criminal suit for theft by a public servant. These facts do more than simply raise a question of Trantham's judgment; they are evidence of an actual conflict of interest between Trantham's representation of Nethery and his representation of Dale. *See Monreal,* 947 S.W.2d at 564. Because this evidence establishes an actual conflict, prejudice is presumed. *See Cuyler,* 446 U.S. at 345, 100 S.Ct. 1708.

Because the record shows a clear, actual conflict of interest between Trantham's representation of Nethery and Dale, and Trantham knew or should have known calling Dale as a defense witness would hurt Nethery, we sustain Nethery's first and third points of error to the extent they address Trantham's conduct relating to Dale. Because of our disposition of points of error one and three, we need not address the other grounds under point of error three, nor need we address point of error one regarding Trantham's dual representation of Nethery and Gibbons.

Because we are reversing for ineffective assistance of counsel, we need not address Nethery's other complaints regarding evidentiary rulings and the punishment imposed.

We reverse the trial court's judgment and remand for further proceedings.