# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00096-CR

**Miles Lee Decker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-01-424, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Miles Lee Decker was charged with felony driving while intoxicated (DWI), Tex. Pen. Code Ann. § 49.04 (West 2003), § 49.09(b) (West Supp. 2004), and aggravated assault, *id.* § 22.02(a)(2) (West Supp. 2004). Following a jury trial, Decker was convicted of felony DWI and the lesser included offense of assault, *id.* § 22.01(a)(1) (West Supp. 2004). Decker pleaded true to enhancement allegations, and the offenses were enhanced to habitual status by prior felony convictions. *See id*. § 12.42(d) (West Supp. 2004). Accordingly, the trial court sentenced Decker to thirty years in the Texas Department of Criminal Justice—Institutional Division on the felony conviction and one year in the Hays County Jail for the assault conviction. Decker appeals the convictions by three issues, claiming ineffective assistance of counsel, error in the jury charge, and

factual insufficiency of the evidence to support the DWI conviction. We will overrule his issues and affirm his convictions.

## BACKGROUND

According to the evidence presented at trial, on August 3, 2001, between 3:00 and 4:00 in the afternoon, Decker was driving northbound on the access road of I-35, took the turnaround underneath the I-35 overpass, and as he traveled southbound on the I-35 access road, crossed several lanes of traffic and hit another vehicle. After colliding with the vehicle, Decker initially slowed down, but then accelerated and left the scene of the accident. Brandy Charlton, the driver of the vehicle Decker struck, chased Decker through a residential neighborhood. Decker eventually pulled over, and Brandy and her husband William exchanged words with Decker. Brandy called the police from a nearby house, and an officer arrived shortly afterwards. The officer smelled alcohol on Decker's breath, observed that his speech was slurred, and found an empty beer can in his car. The officer also spoke to the Charltons, who described how the accident occurred. He then attempted to administer field sobriety tests to Decker, but Decker refused to comply. The officer thereafter arrested Decker for DWI. At the police station, Decker again refused to perform any field sobriety tests and refused to provide a breath specimen.

Decker was charged with felony DWI and aggravated assault. Following a jury trial, he was convicted of the felony DWI charge and the lesser included offense of assault. This appeal follows.

2

**DISCUSSION**

By his first issue, Decker argues that he received ineffective assistance of counsel at trial because his trial counsel failed to prevent the jury from learning of his prior DWI convictions, even though he had stipulated to those prior convictions. Before the trial began, Decker's trial counsel filed a motion to stipulate, by which Decker stipulated to two prior DWI convictions, the jurisdictional predicate offenses alleged in the indictment. Nevertheless, the State (1) during voir dire, advised the jury that the offense of felony DWI required at least two prior DWI convictions; (2) during opening statements, advised the jury that Decker had signed a stipulation admitting that he had committed the predicate DWI offenses; (3) read the stipulation to the jury; and (4) during closing argument, reminded the jury that Decker had stipulated to the two prior convictions. In addition, in the jury charge, the trial court instructed the jury that it was required to find that Decker had been convicted of the two predicate DWI offenses before finding him guilty of felony DWI. Decker argues that the motion to stipulate should have foreclosed the State from presenting evidence of the convictions during its case in chief. Because Decker's trial counsel did not object to any of the references to the prior DWI offenses, Decker contends on appeal that his counsel provided ineffective assistance.

By his second issue, Decker claims that the trial court erred in allowing references to his prior DWI convictions in the jury charge. Because Decker's first and second issues are governed by the court of criminal appeals' recent decision in *Hollen v. State*, 117 S.W.3d 798 (Tex. Crim. App. 2003), we will discuss the two issues together.

3

**Ineffective assistance of counsel**

The Sixth Amendment to the United States Constitution guarantees the right to the reasonable effective assistance of counsel in state criminal proceedings. *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *see also Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). We measure claims of ineffective assistance of counsel against the two-pronged test announced by the United States Supreme Court in *Strickland v. Washington*. *See* 466 U.S. 668 (1984), and adopted in Texas by *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). Under the *Strickland* standard, a convicted defendant must (1) show that his trial counsel's performance was deficient in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defendant to such a degree that the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 686-89; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin 2000, pet. ref'd). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. We find the deficient performance prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 812-13. The defendant has the burden to prove a claim

4

of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer*, 38 S.W.3d at 665.

In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of each case. *Id.* An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *Parmer*, 38 S.W.3d at 666; *Wilkerson*, 726 S.W.2d at 548; *Duvall v. State*, 59 S.W.3d 773, 779 (Tex. App.—Austin 2001, pet. ref'd). Furthermore, we do not speculate about an attorney's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). The fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Nethery v. State*, 29 S.W.3d 178, 188 (Tex. App.—Dallas 2000, pet. ref'd); *see also Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (courts not "required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all").

**Prior DWI convictions**

When a defendant agrees to stipulate to prior convictions that constitute jurisdictional elements of the charged offense, the State may not present evidence of those convictions during its case in chief. *Hernandez v. State*, 109 S.W.3d 491, 495 (Tex. Crim. App. 2003); *Robles v. State*, 85 S.W.3d 211, 212-14 (Tex. Crim. App. 2002); *Tamez v. State*, 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000). The State is permitted, however, to read the indictment at the beginning of trial,

including the prior convictions that are jurisdictional only; to introduce the stipulation into evidence; and to refer to the prior convictions in a legitimate manner during voir dire, opening statements, and closing arguments. *Hollen*, 117 S.W.3d at 802; *Tamez*, 11 S.W.3d at 202.

In *Hollen*, as in this case, the appellant's indictment for felony DWI included allegations of two prior DWI convictions, and appellant provided a stipulation. *Hollen*, 117 S.W.3d at 799. Over appellant's objections, the indictment, including the two prior DWI conviction allegations, was read to the jury; the State referenced the prior convictions in voir dire, opening statements, and closing argument; the stipulation was admitted into evidence; and the jury charge mentioned the prior convictions along with a limiting instruction. *Id.* The court of criminal appeals held that because the two prior convictions are jurisdictional elements of the offense that must be proven to the fact finder to establish the offense of felony DWI, the jury could be informed of the stipulation and the stipulation could be admitted into evidence. *Id.* at 802. The court further held that because the two prior offenses were validly mentioned in the indictment and introduced into evidence via the stipulation, "there was likewise no error in the jury instructions, and the prior convictions were the legitimate subject of voir dire, opening statements, and closing arguments." *Id.*

In this case, as in *Hollen*, the State did not present evidence of Decker's prior convictions in its case in chief. Rather, because the prior convictions are jurisdictional elements of felony DWI and the stipulation is evidence of those convictions, the State properly read into evidence Decker's stipulation and referred to the prior convictions in its voir dire, opening statement, and closing argument. Thus, even if Decker's trial counsel had objected to the State's reference to

6

the prior DWI convictions or the stipulation, the trial court would not have erred in overruling the objections. We therefore hold that the performance of Decker's trial counsel did not fall below an objective standard of reasonableness. Decker's first issue is overruled.

With respect to Decker's second issue, the jury charge in this case is similar to the one in *Hollen*: it mentions Decker's two prior DWI convictions but includes a limiting instruction. The court of criminal appeals in *Hollen* held that mention of the prior DWI convictions in the jury charge, along with a limiting instruction, is not error when the charged offense is felony DWI. We therefore overrule Decker's second issue.

**Factual sufficiency of the evidence**

By his third issue, Decker challenges the factual sufficiency of the evidence to support his DWI conviction, arguing that the evidence is insufficient to establish that he was intoxicated. The indictment alleged that Decker operated a motor vehicle while intoxicated, that is, while not having the normal use of his mental or physical faculties by reason of the introduction of alcohol. *See* Tex. Pen. Code Ann. § 49.01(2)(A) (West 2003). In determining the factual sufficiency of the elements of an offense, the reviewing court views all of the evidence in a neutral light and sets aside the verdict only if it is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 6-7, 11 (Tex. Crim. App. 2000). Due deference must be accorded the fact finder as the sole judge of weight and credibility given to witness testimony. *Id.* at 7; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). We do not reweigh the evidence and set aside a verdict merely because a different result would be more reasonable. *Jones*, 944 S.W.2d at 648; *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.

7

Crim. App. 1996). A determination that a jury's verdict is factually insufficient is only appropriate when the evidence is so weak as to be clearly wrong or manifestly unjust or if the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Zuliani v. State*, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Bill Holland, a witness to the accident, testified that on August 3, 2001, between 3:00 and 4:00 p.m., he was traveling on the southbound access road of I-35 when he saw a car (later identified as Decker's) traveling on the northbound I-35 access road make a U-turn in the turnaround lane underneath the I-35 overpass, cross three lanes of traffic on the southbound access road, and hit a car that was in the far right lane. Both cars slowed down after the accident, but Decker's car then accelerated and left the scene. The other car followed it. Holland followed the vehicles for about a block, but when he could not keep up with them, he stopped at a nearby gas station, where he saw a police officer and reported what he had witnessed.

William Charlton testified that on August 3, 2001, shortly after 3:00 p.m., he was involved in a traffic accident in San Marcos. He and his wife and two children were traveling south on the I-35 access road in the far right lane; his wife, Brandy, was driving. Decker's car came from the turnaround lane under the overpass, crossed two lanes, and sideswiped the Charltons' car. After the collision Brandy initially slowed down, as did Decker, but then Decker sped away, and the Charltons "gave chase." The Charltons followed Decker for about three miles, zigzagging through several streets in a residential neighborhood before they caught up to Decker, and he finally pulled over. Once stopped, William got out of the car, approached Decker's vehicle, and asked him why

8

he did not stop after the accident. Decker answered, "Well, I was scared. I didn't know it was going to happen." William observed that Decker seemed very nervous, was shaking "really badly," and was pleading with the Charltons not to call the police. When asked whether he observed anything about Decker that gave him reason to believe he might have been drinking, William answered, "He did seem nervous and his speech was somewhat slurred."

After calling the police from a nearby house, Brandy approached Decker and began talking to him as well. William overheard Decker explain to Brandy that he did not stop after the accident because he was scared. Brandy asked if he had been drinking, and Decker said no. When Brandy got closer to Decker, she said, "Yes, you have. I can smell it." Decker responded, "Oh, no. Please don't call the cops." Brandy again asked Decker if he had been drinking, and this time, he said, "I know I have been drinking, but I'm sorry."

Brandy Charlton testified that she was driving on the southbound I-35 access road, when Decker's car collided with hers. After the collision, Decker's vehicle pulled in front of the Charltons' car and appeared as if it was going to pull over. Then, the car took off into a residential neighborhood, traveling at a high rate of speed, running stop signs, and turning on several streets; Brandy followed it. Brandy finally caught up with Decker, and they both pulled over. Brandy's husband exchanged words with Decker first, which Brandy overheard. Decker told William that he took off after the accident because he was scared; he said his mother was going to get mad at him. Meanwhile, Brandy checked on her children in the car and then crossed the street to a nearby house, where she called the police. When she returned, she asked Decker if he had been drinking. He answered no, and Brandy accused him of lying because she had smelled the alcohol on his breath.

9

Decker then admitted he had been drinking and said he was sorry for that. Brandy further testified that Decker appeared to be slurring his speech, but admitted that she was unaware of whether his speech was usually slurred. She refused to opine as to whether she believed Decker was intoxicated.

Jason Mabbitt, a paramedic with San Marcos EMS, testified that he arrived on the scene after Decker had been placed in the back seat of a police car. He treated a cut on Decker's hand. He observed that Decker was "alert and oriented to person, place, time and events." According to Mabbit, Decker's speech was slurred and Mabbit smelled alcohol on his breath. He asked Decker if he had consumed any alcohol, to which Decker replied, "No comment." Mabbit did not, however, form an opinion as to whether Decker was intoxicated.

Rudy Mesa, a police officer with the City of San Marcos, was at a gas station when he was approached by Holland, who reported an accident. Mesa also received information from dispatch regarding the location of the vehicles involved in the accident. When he arrived at the scene where the vehicles had pulled over, he spoke to the Charltons and Decker. As Mesa was speaking with Decker, he detected an odor of alcohol on his breath. Mesa asked Decker if he had been drinking, and Decker said no. After obtaining Decker's consent, Mesa searched Decker's vehicle and found under the passenger seat an empty, twenty-four-ounce beer can in a paper bag. At that point, Mesa was not yet concerned that Decker might have been intoxicated. Mesa then spoke to the Charltons again. When he returned to Decker, Mesa asked him to perform field sobriety tests, but Decker refused. It was then that Mesa formed the opinion that Decker was intoxicated and arrested him. Mesa's opinion was based in part on Decker's acts, the smell of alcohol on his breath, the description of the accident, and the fact that Decker left the scene. Mesa had Decker sit in the back

10

seat of his vehicle. He described Decker's demeanor as passive and not combative. After the paramedic arrived and treated Decker, Mesa transported him to the county jail. At the jail, Mesa asked Decker to enter the videotaping room, but Decker refused. After Mesa explained to Decker that if he refused to enter the room Mesa would have the jailers assist him in forcing Decker into the room, Decker voluntarily entered the room. In the room, Decker refused to perform any field sobriety tests and declined to provide a breath sample.

On appeal, Decker argues that the odor of alcohol on his breath does not alone mandate a conclusion of intoxication. Similarly, the fact that a defendant has had a traffic accident, even after consuming alcohol, does not prove that he was driving while intoxicated. Nor does the refusal to take a breath or blood test conclusively prove intoxication.

Under a factual sufficiency review, however, we do not view each piece of evidence in isolation. Rather, we view all of the evidence, both for and against the finding of guilt, in a neutral light. Under this standard, we observe that not only did several witnesses detect the smell of alcohol on Decker's breath and describe his speech as slurred, but Decker hit a car and then fled the scene of the accident, *see Douthitt v. State*, No. 03-02-00810-CR, slip op. at 18, 2004 Tex. App. LEXIS 794, at *29 (Tex. App.—Austin January 29, 2004, no pet. h.) (holding intoxication manslaughter defendant's decision to leave scene of accident was indicative of person whose judgment was impaired); he first denied and then admitted to Brandy that he had been drinking; he did not want the Charltons to call the police; he attempted to avoid being videotaped; and he refused to perform field sobriety tests or provide a breath specimen, *see Gaddis v. State*, 753 S.W.2d 396, 399 (Tex. Crim. App. 1988) (intoxication is legitimate deduction from defendant's refusal to take

11

breath test). Evidence in Decker's favor includes Mesa's testimony that his demeanor was passive and not combative; the paramedic's description of Decker as alert and oriented; and the fact that a search of his vehicle turned up only one beer can. We hold that the evidence of Decker's intoxication (not having the normal use of his mental or physical faculties by reason of introduction of alcohol) is not so weak as to be clearly wrong or manifestly unjust, nor is the finding of intoxication so contrary to the great weight and preponderance of the evidence as to be clearly wrong. We overrule his third issue.

## CONCLUSION

Having overruled all of Decker's issues on appeal, we affirm his convictions.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: March 11, 2004

Do Not Publish

12