COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RAYMOND JOE TAYLOR, | § | No. 08-12-00143-CR |
| Appellant, | § | Appeal from the |
| v. | § | 355th Judicial District Court |
| THE STATE OF TEXAS, | § | Hood County, Texas |
| Appellee. | § | Cause No. CR11748 |
| | § | |

# **O P I N I O N**

Raymond Joe Taylor appeals his conviction on three counts of Aggravated Assault with a Deadly Weapon. The jury assessed a sentence of 80 years' in prison, to run concurrently, and a $10,000.00 fine. In his sole issue on appeal, Taylor contends that there was insufficient independent evidence to corroborate the inculpatory testimony of an accomplice witness. For the following reasons, we affirm.

## **BACKGROUND**

### *Factual History*

This case arises out of a shooting incident in Granbury, Texas. On August 3, 2010, twenty-six-year-old Appellant and nineteen-year-old Caleb Fonseca stopped at a Shell gas station on their way to visit Appellant's wife at the Jalapeno Tree Restaurant. Fonseca and

Appellant were acquaintances. Fonseca would give Appellant rides and Appellant in turn would give Fonseca gas money. While at the gas station, Fonseca got into a verbal altercation with David Tarvin and Clint Morton, members of the Dynasty gang who had been harassing Fonseca and sending him online death threats via Myspace messages. While the argument was going on, another car carrying Dynasty member Christian Castillo, his girlfriend Teresa Rosenquist, and Kristin White arrived at the gas station. Tensions continued to escalate before convenience store employees informed everyone in the group that they were going to call the police.

What happened next is in dispute. Although Appellant elected not to take the stand in his own defense, the trial court admitted, without objection, a redacted video recording of Appellant's police interrogation the night of the shooting. In the video, Appellant said that he told Fonseca that if he was going to get into a fight, then he should get the fight over with, but that Appellant wanted no part in the fight and he wanted Fonseca to take him home. He also said that Fonseca complied and drove him home, but that the group from the gas station followed the car to the house. Appellant claims he asked Fonseca to not stop at the house because his children were there, but that Fonseca drove there anyway.

Once the car stopped, Appellant said, he gathered up his children and nephew and ushered them into the back room. Fonseca and the Dynasty gang members continued arguing outside. Appellant then exited the house and told everyone to get off his property. At that point, he said, Fonseca fired one or two shots from a shotgun. The group of people from the gas station and Fonseca all fled the scene. Fonseca returned five to ten minutes later, stating that he left his gun at his sister's house and claiming that he fired because he thought the group that had followed them to Appellant's house had a gun. Appellant said he then got back in Fonseca's car because he was afraid that his wife would be worried about him not showing up on time to meet

2

her at her job, especially given that they had been fighting recently.

Fonseca and other witnesses disputed Appellant's account of events in their trial testimony. Fonseca, White, and Rosenquist all testified that at the gas station, Appellant had suggested that if the group really wanted to fight, they should go to his home in the Indian Harbor subdivision because the police would not intervene there. Fonseca and Rosenquist testified that everyone agreed to this arrangement, loaded into three separate cars, and then departed for Appellant's house. Fonseca further testified that prior to leaving for the gas station, Fonseca had Appellant place Fonseca's shotgun into Appellant's house. Fonseca said that during the car ride back to Appellant's house from the gas station, Appellant asked Fonseca where he kept the bullets for his shotgun. When Fonseca replied that they were in the trunk, Appellant purportedly told him to "[p]op the trunk when we pull up" to the house.

White testified that when she arrived at Appellant's house, she witnessed Fonseca open the trunk of his car at Appellant's house, remove a bag, and hand the bag to Appellant. Appellant then told White, "[d]on't worry about it, little mama. I'm just taking my CDs inside,"[1] before stepping into his house. Fonseca maintained that the bag actually contained shotgun ammunition. White saw stray shotgun shells in the trunk, yelled out that Fonseca had shotgun shells, and then ran to her car. Fonseca then walked toward the front door.

Forensic analysis indicated that a gunman wielding a shotgun fired three shots from the porch and driveway in front of Appellant's house. The identity of the gunman was in dispute at trial. Neighbors testified that they heard gunshots and found bullet holes on their property, but only two witnesses actually identified the gunman at trial. White, who suffered facial injuries from shotgun pellets and broken glass, admitted that she did not actually see who shot her, but testified that she believed Appellant was the shooter. She also initially told police that Fonseca

---

[1] Kristin White was four months pregnant at the time of this shooting.

had shot her, but later told police at the hospital that Appellant was the gunman. Megan Bonham, the second eyewitness, testified that the gunman was a "tall" male standing on the porch. Fonseca is 6'0" tall. Appellant is 5'4" tall.

Fonseca maintained during trial testimony that Appellant was the shooter, and that when he asked Appellant why he was shooting, Appellant replied, "I don't give a damn. I'll kill them all." Prior to Appellant's trial, Fonseca pleaded guilty to one count of aggravated assault arising out of this same incident. Appellant admitted in the police interrogation video that he encouraged Fonseca to fight the other people at the gas station, but denied firing the shotgun that day. No fingerprints were collected from the shotgun, and no gunshot residue was found on either Appellant or Fonseca.

### *Procedural History*

Appellant was indicted on three counts of Aggravated Assault with a Deadly Weapon. Appellant pleaded not guilty to all three charges. The jury found Appellant guilty on all three counts, sentenced him to 80 years' in prison, and assessed a $10,000.00 fine.

### DISCUSSION

In his sole issue, Appellant argues that his conviction should be overturned under TEX.CODE CRIM.PROC.ANN. art. 38.14 because biased testimony from Fonseca identifying Appellant as the shooter is uncorroborated by other independent evidence in the record. We disagree.

### *Standard of Review*

The Texas Legislature has established that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[.]" TEX.CODE CRIM.PROC.ANN. art. 38.14 (West 2005).

4

"The rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution," since "accomplices often have incentives to lie. . . [and] avoid punishment or shift blame to another person." *Blake v. State*, 971 S.W.2d 451, 454 (Tex.Crim.App. 1998).

Evidentiary sufficiency under the accomplice witness rule is a separate level of review created by statute that is independent from legal and factual sufficiency reviews as defined by the federal and state constitutions. *Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex.Crim.App. 1999). In assessing an evidentiary challenge under the accomplice witness statute, we first eliminate the accomplice's live, sworn testimony at trial from consideration, *Cockrum v. State*, 758 S.W.2d 577, 581 (Tex.Crim.App. 1988); *Torres v. State*, 137 S.W.3d 191, 196 (Tex.App.--Houston [1st Dist.] 2004, no pet.), and then review the remaining evidence in the light most favorable to the verdict, *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex.App.--Austin 2002, no pet.); *Cathey*, 992 S.W.2d at 463 n.4, to determine whether a rational juror would believe the evidence "tends to connect the defendant" to the charged crime. *Id.* at 462. If not, the defendant is entitled to a judgment of acquittal. *Torres*, 137 S.W.3d at 196; TEX.CODE CRIM.PROC.ANN. art. 38.17.

The precise level of evidence needed to corroborate an accomplice's testimony and sustain a conviction is undefined and largely hinges on the underlying facts and circumstances of each case. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App. 1996). "All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary[.]" *Gandy v. State*, 835 S.W.2d 238, 241 (Tex.App.--Houston [1st Dist.] 1992, pet. ref'd). "Corroboration may rest on direct or circumstantial evidence." *Gaston v. State*, 324 S.W.3d 905, 909 (Tex.App.--Houston [14th Dist.] 2010, pet. ref'd); *see also Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App. 1991). Corroborating evidence "tending to connect the defendant with the

offense committed" under Article 38.14 does not need to "directly connect the defendant to the crime" or "be sufficient by itself to establish guilt . . . ." *Cathey*, 992 S.W.2d at 462. Instead, a showing of some evidence beyond the mere commission of an offense or beyond the defendant's presence before, during, or after its commission is sufficient to establish the nexus. *See Dowthitt*, 931 S.W.2d at 249; *Colella v. State*, 915 S.W.2d 834, 838-39 (Tex.Crim.App. 1995). "[P]resence combined with other suspicious circumstances . . . [or] evidence the defendant was in the presence of the accomplice at or near the time or place of the offense is proper corroborating evidence." *Barrera v. State*, 321 S.W.3d 137, 148 (Tex.App.--San Antonio 2010, pet. ref'd). Likewise, evidence of motive, opportunity, and demeanor, when taken in concert with other evidence, may be enough to corroborate accomplice testimony. *See Smith v. State*, 332 S.W.3d 425, 442 (Tex.Crim.App. 2011). "Any independent evidence tending to verify an accomplice witness's version rather than the defendant's version is deemed to be corroborative, even if it goes only to a mere detail versus a substantive connection between the defendant and the offense." *Nethery v. State*, 29 S.W.3d 178, 185-86 (Tex.App.--Dallas 2000, pet. ref'd)[internal citation and quotation marks omitted].

The State concedes at the outset of its brief that "Caleb Fonseca was an accomplice as a matter of law because Fonseca was charged with—and pled guilty to—the same offense as Appellant." *See also Cocke v. State*, 201 S.W.3d 744, 748 (Tex.Crim.App 2006). As such, the accomplice witness rule applies, and we review the record as a whole—minus Fonseca's trial testimony—to determine if there is sufficient evidence linking Appellant to the shooting.

### *Application of Law to the Facts*

Appellant argues that absent Fonseca's testimony, the State has failed to adduce any evidence at trial credibly establishing anything beyond Appellant's mere presence at the scene of

the shooting, which is in and of itself insufficient to support his conviction. *See Dowthitt*, 931 S.W.2d at 249. He notes that of the eleven witnesses the State presented in addition to Fonseca, only two—Kristen White and Megan Bonham—identified the shooter in court. Appellant contends that neither of those eyewitnesses can credibly establish that Appellant was the shooter. He points to the fact that White initially identified Fonseca as the shooter as proof that she is not a credible witness. He also argues that the fact that Bonham stated that the shooter was "tall" when Fonseca stands at 6'0" tall and Appellant is only 5'4" is proof that Fonseca and not Appellant actually fired the shotgun. The State responds that the witness testimony and forensic evidence sufficiently corroborate Fonseca's testimony under the accomplice witness rule. We agree.

We acknowledge that the timeline of events, the vantage point of eyewitnesses, and testimonial inconsistencies may not conclusively establish the shooter's identity absent Fonseca's testimony. However, the standard for reversal under the accomplice witness rule is not pegged to proof beyond a reasonable doubt. *Cathey*, 992 S.W.2d at 462. Instead, the statute provides the remedy of acquittal only where there is little to no evidence independently corroborating an accomplice's testimony *connecting* the defendant to a crime. *Id*. at 463. Here, the State has offered some evidence that could plausibly corroborate Fonseca's testimony and show that Appellant was connected to the shooting.

Although Appellant's presence at the crime scene, his association with a party that pled guilty to the offense, his self-professed disdain for the gang members, and his desire to see a fight could be insufficient to corroborate Fonseca's testimony when taken individually, we must not take a divide-and-conquer approach, but instead view the record as a whole and consider them as relevant corroborating factors when taken together. *See Ex parte Martinez*, 330 S.W.3d

7

891, 894 n.4 (Tex.Crim.App. 2011)("accused's presence in the accomplice's company before, during, and after the commission of the offense" may corroborate when linked to other evidence); *Dowthitt*, 931 S.W.2d at 249 (presence at scene of the crime may corroborate contingent upon linkage); *Smith*, 332 S.W.3d at 442 (motive evidence may corroborate accomplice where taken with other evidence). Likewise, the fact that Appellant had the opportunity to enter his home and retrieve a firearm prior to the shooting, although insufficient to corroborate Fonseca's testimony alone, becomes significant when viewed in light of the fact that Fonseca testified he had left his shotgun at Appellant's home and no eyewitness testified to seeing a gun prior to Appellant's entry into the home. *Id.* (opportunity evidence may be linked with other evidence for corroboration); *Gaston*, 324 S.W.3d at 909 (circumstantial evidence is proper corroborating evidence).

Apart from the inferential evidence of presence, motive, and opportunity, other witnesses explicitly corroborated Fonseca's version of events. White corroborated Fonseca's claim that Appellant set the shooting into motion when she testified that Appellant told the group at the gas station to "[f]ollow me to my house" because "[t]here will be no law[,]" which she understood to mean "no police." White's testimony also directly contradicted Appellant's video recorded statement in which he claimed he wanted no part in the fight, told Fonseca to drive him home, and maintained the group from the gas station followed them to Appellant's home on their own. The jury, as finder of fact, was free to believe that the inconsistencies between Appellant's police statement and other eyewitness testimony tended to independently corroborate Fonseca's version of events and resolve those inconsistencies against Appellant. *See Nethery*, 29 S.W.3d at 185-86 (holding that "[a]ny independent evidence tending to verify an accomplice['s]" story over a defendant's story is corroborative).

8

White further corroborated Fonseca's assertion that Appellant removed a bag from the trunk and took it with him into his house prior to the start of the shooting, thereby also contradicting Appellant's statement to police in which he claimed that as soon as he returned to his house, he immediately exited the car and shepherded his children to the room. White's testimony that the trunk from which the bag came contained shotguns shells constituted circumstantial evidence corroborating Fonseca's testimony that the bag Appellant carried into the house contained shotgun shells. *Id.* (evidence may be corroborative even if it "goes only to a mere detail" and not a "substantive connection between the defendant and the offense"). Additionally, her testimony that only a short time elapsed between Fonseca walking to the front door while she attempted to start her car and her being shot is circumstantial evidence corroborating Fonseca's claim that Appellant was the gunman. Forensic testing showed that shots were fired from the porch near the front of the house, and given the time frame, it would have been easier for Appellant to obtain the gun from inside the house and begin shooting from that position than for Fonseca to do the same.

Finally, evidence gathered during the course of the police investigation corroborates Fonseca's version of events. After the shooting, Fonseca stated he placed the loose shotgun shells in the console of his vehicle and that he and Appellant went to Fonseca's house and hid the gun in Fonseca's closet. Fonseca further testified that Appellant asked to use the restroom after the shooting. When Appellant came out of the bathroom, "[h]e was drying off his hands on his pants." Fonseca and Appellant were arrested a short time later.[2] Police later found the gun in Fonseca's closet and unspent shotgun shells in the car's console. Forensic testing showed no gunshot residue on either Appellant's or Fonseca's hands. In viewing the evidence in the light most favorable to the verdict, we find that the State has met its burden in connecting Appellant to

[2] Fourteen minutes elapsed from the time of the first 911 call until Appellant and Fonseca were arrested.

the aggravated assault under TEX.CODE CRIM.PROC.ANN. art. 38.14. As such, reversal of the verdict and rendition of an acquittal judgment under the accomplice witness statute is unwarranted.

Issue One is overruled. We affirm Appellant's conviction.


February 26, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)