In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00178-CR

MARQUEL PIERRE FITZGERALD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. CR22-0271

## MEMORANDUM OPINION

Appellant Marquel Pierre Fitzgerald appeals his conviction for the offense of evading arrest or detention with a motor vehicle, a third-degree felony, which was enhanced to a second-degree felony due to Fitzgerald's previous felony conviction. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A).[1] In three issues, Fitzgerald complains

---

[1] We note that the Legislature enacted two different versions of section 38.04(b) in 2011 and that an offense is a third-degree felony if an offender used a vehicle to evade arrest, regardless of whether he has a prior conviction for evading.

that he was denied his Fifth and Sixth Amendment rights and protections, and that the trial court erred in failing to ensure that the grievance Fitzgerald filed against his attorney did not create a conflict of interest. For the reasons explained below, we affirm the trial court's judgment.

## BACKGROUND

A grand jury indicted Fitzgerald for the offense of evading arrest of detention with a vehicle, alleging that Fitzgerald:

> on or about May 13, 2022, did then and there intentionally flee from Brandon Frazier, a person the Defendant knew was a peace officer who was attempting to lawfully arrest or detain the Defendant, and the Defendant used a motor vehicle while he was in flight[.]

*See id.*

Fitzgerald's counsel requested the trial court to appoint a mental health expert to examine Fitzgerald "with regard to his competency to stand trial and to testify at any trial or hearing on this issue." To support this request in the motion for competency and mental health, counsel cited the following:

> Some of the factors leading defense counsel to believe his client needs to be examined by disinterested experts are: a) Defendant has a history of mental health issue and has been prescribed medication for such conditions and is currently on medication but not taking it while in jail

---

*See Copeland v. State*, No. 09-19-00194-CR, 2020 Tex. App. LEXIS 2235, at **6–9 (Tex. App.—Beaumont Mar. 18, 2020, no pet.) (mem. op., not designated for publication); *see also* Act of May 27, 2011, 82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Sess. Law Serv. 2321, 2322; Act of May 23, 2011, 82nd Leg., R.S., ch. 391 § 1, 2011 Tex. Sess. Law Serv. 1046, 1046 (current version at Tex. Penal Code Ann. § 38.04).

b) Defendant has a documented history of unstable, erratic and irrational behavior when he is not under prescribed medications and c) at the time the act of Evading is alleged to have occurred, Defendant was not on his medication resulting in strange and erratic behavior from Defendant[.]

The court appointed Dr. Daniel Osborn to examine Fitzgerald. When Dr. Osborn twice attempted to visit Fitzgerald at the jail, Fitzgerald "refused to speak" to him and told him to "talk to his attorney."

On the Wednesday before the Monday trial setting, the trial court conducted an informal inquiry to determine whether to hold a trial on the issue of Fitzgerald's competency to stand trial. *See* Tex. Code. Crim. Proc. Ann. art. 46B.004(c). At that hearing, Fitzgerald's attorney told the court that, although he had filed a motion to have Mr. Fitzgerald "examined by a doctor for competency," Mr. Fitzgerald refused to meet with the doctor because "he believes he's competent." The Court then said: "Well, the state has some questions for you." The court heard testimony by way of cross-examination of Fitzgerald by the prosecutor on the competency issue. Based upon this initial inquiry, the court found Fitzgerald was competent to stand trial and no formal competency trial was necessary. The trial before a jury proceeded the next Monday. The jury found Fitzgerald guilty and assessed a seventeen-year sentence and a $10,000 fine. We summarize the relevant evidence below.

Fitzgerald's Testimony at the Competency Inquiry

Fitzgerald was the sole witness at this informal inquiry. In response to questions from the State, he verified his understanding of the charges, the judge's and jury's respective roles in the trial, and the extent of his communication with his attorney. The exchange went as follows:

[The State]: Can you state your name for the record?

[Fitzgerald]: Marquel Pierre Fitzgerald.

[The State]: Okay. And are you aware of the charge that you have been charged with?

[Fitzgerald]: Yes, ma'am.

[The State]: Can you explain what that is to the Court?

[Fitzgerald]: I believe it's an evading arrest.

[The State]: Okay. Do you know what that means?

[Fitzgerald]: Yes, ma'am.

[The State]: Can you explain that to the Court?

[Fitzgerald]: If you knowingly and intentionally flee from a police officer or investigator that you know is trying to unlawfully [sic] detain you.

[The State]: Okay. Have you been able to communicate with your attorney Mr. [name] about the case?

[Fitzgerald]: Am I allowed to go into the facts?

[The State]: No, sir.

4

[Fitzgerald]: No, ma'am.

[The State]: Just have you been able to communicate with Mr. [name]?

[Fitzgerald]: Kind of sort of.

[The State]: Okay. Do you believe he understands the case that you stand accused of?

[Fitzgerald]: Not in my entire life have I got the chance to speak to him. When he come visits me, he visits all the other defendants and kind of splits up the time.

[The State]: Yeah.

[Fitzgerald]: And it be stuff like I forgot to tell him this or I forgot - -

[The State]: Have you made those notes so you can communicate with him about those?

[Fitzgerald]: Yeah. Yes, ma'am.

[The State]: Okay. Do you understand we're set for trial on Monday?

[Fitzgerald]: Yes, ma'am.

[The State]: Okay. And are you aware of the judge's role in a trial setting?

[Fitzgerald]: Yes, ma'am. I'm having a jury trial, correct?

[The State]: Yes, sir.

[Fitzgerald]: Yes, ma'am.

[The State]: Okay. Are you aware of the judge's role?

[Fitzgerald]: Yes, ma'am. He has to mediate, right, to make sure that everyone's doing their, like being ethical and stuff like that.

[The State]: Okay. Are you aware of what the jury's role is?

5

[Fitzgerald]: Yeah. Yes, ma'am. Well, I have the lawyer, like the thing when we pick the jury.

[The State]: Mm-hmm.

[Fitzgerald]: Yes, ma'am.

[The State]: Okay. And you're aware it would be left up to the jury members to determine your guilt or innocence?

[Fitzgerald]: Yeah. Yes, ma'am.

[The State]: Okay. Or to render a verdict of guilty or not?

[Fitzgerald]: Yes, ma'am.

Fitzgerald also identified the court reporter and the deputy court clerk. Fitzgerald's attorney questioned him about a plea offer and the penalty enhancement:

[Defense Counsel]: So you and I discussed your case, is that right?

[Fitzgerald]: Like I said, kind of sort of.

[Defense Counsel]: Are you aware of the offer that the state has made to resolve this case?

[Fitzgerald]: (No audible response.)

[Defense Counsel]: You don't - -

[Fitzgerald]: No, sir.

[Defense Counsel]: You and I never discussed an offer made by the state for, to resolve your case?

[Fitzgerald]: I don't recall, no, sir.

. . .

[Defense Counsel]: And you understand that your punishment has been enhanced from a third-degree to a second-degree, if found guilty, and possibly face 20 years in TDC? You understand that?

[Fitzgerald]: (No audible response.)

[Defense Counsel]: No other - -

[Fitzgerald]: Do I have that in sentencing phase or - -

[The State]: That's correct, we would do it at the sentencing phase.

[Fitzgerald]: Yes, ma'am.

[The State]: So if you're found guilty we're going to put on additional evidence for punishment and that could increase your time in jail from 2 to 10, which is as it stands.

[Fitzgerald]: Yes, ma'am.

[The State]: But with the enhancement that's already been filed properly with the court, your attorney knows about it, and you're aware of your previous conviction, are you not?

[Fitzgerald]: Yes, ma'am.

[The State]: Okay. So that then comes in at punishment, if they find you guilty, and then the range of punishment moves from the minimum of two years and maximum of 10 to two years and all the way up to 20 years?

[Fitzgerald]: Yes, ma'am.

[The State]: Okay. And you had been made an offer, are you his only attorney or was there one prior?

[Defense counsel]: It was a prior attorney.

7

. . .

[The State]: Ms. [name]. I gave her the offer, we didn't reach an agreement, and then I filed for the enhancement. And then Mr. [name] has conveyed to me that he provided that offer to you on I think more than two - -

[Defense Counsel]: Several occasions.

[The State]: And has even asked me an additional question which the state, he asked for something lower and the state declined. The state is firm in its offer. Do you understand that?

[Fitzgerald]: Yes, I know, I'm aware of it, yes, ma'am.

In addition, Fitzgerald accused the court system of racial bias, stating:

I've seen other offenders with cases worse than mine leave and come back. I have been incarcerated in your county for a year. I ain't going to lie, most offenders, white offenders, and I believe like the black offenders don't get a fair shake out here, and be treated unfair. I have seen white guys, meth heads get back out, do dope, they're sentenced to some type of program and come back.

Fitzgerald later added: "I had filed a complaint, a criminal complaint against [Defense Counsel], a complaint with the grievance, with the Texas Bar Association. So I feel like probably him being my attorney I probably wouldn't get a fair trial." The court concluded that Fitzgerald was competent to stand trial.

8

**STANDARDS OF REVIEW AND APPLICABLE LAW**

Issue One: Privilege Against Self-Incrimination – Competency Proceeding

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. The Fourteenth Amendment incorporated this right to the states. U.S. CONST. amend. XIV; *see Malloy v. Hogan*, 378 U.S. 1, 3 (1964) ("We hold that the Fourteenth Amendment guaranteed the petitioner the protection of the Fifth Amendment's privilege against self-incrimination[.]"); *see also Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (same). In *Miranda v. Arizona*, the United States Supreme Court held that a suspect must be warned of this privilege before custodial interrogation. 384 U.S. 436, 467–68 (1966) ("[I]f a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent."). In *Salinas v. Texas*, however, the Court held that a defendant does not enjoy the protection of his privilege against self-incrimination if he does not "expressly invoke the privilege[.]" 570 U.S. 178, 181 (2013) ("It has long been settled that the privilege 'generally is not self-executing'" and that "'petitioner was required to assert the privilege in order to benefit from it.'").

*Miranda*, however, guards only against "'government coercion leading [defendants] to surrender rights protected by the Fifth Amendment[.]'" *Oursbourn*

9

*v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008) (quoting *Colo. v. Connelly*, 479 U.S. 157, 170 (1986) (Without government "coercion or overreaching[,]" there is no violation of either *Miranda* or the due process clause, even if the suspect was incompetent at the time he made the statement). *See id.* at 171–73. In *Colorado v. Connelly*, the Supreme Court focused on the police conduct, citing *Miller v. Fenton* for the proposition that "'certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned.'" *Connelly*, 479 U.S. at 163 (quoting *Miller v. Fenton*, 474 U.S. 104, 109 (1985)).

We review a claim of a *Miranda* violation under a bifurcated standard. *See Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We afford "almost total deference [to] the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor[.]" *Id.* (citations omitted) We review "de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Id.* (citations omitted).

"A defendant's competency to stand trial is a question of fact to be determined by the appropriate factfinder[.]" *Turner v. State*, 570 S.W.3d 250, 262 (Tex. Crim. App. 2018). A criminal defendant, such as Fitzgerald, is presumed competent to stand trial. *See id.* (referencing the presumption of competency); Tex. Code Crim.

10

Proc. Ann. art. 46B.003(a). "The 'trial court's first-hand factual assessment of a defendant's competency is entitled to great deference' on appeal." *Boyett v. State*, 545 S.W.3d 556, 561 (Tex. Crim. App. 2018) (citation omitted). The trial court's consideration, however, is limited "to the evidence suggestive of incompetency." *Id.* at 563. It is only to consider evidence of incompetency and may not weigh the evidence of competence against the evidence of incompetence. *See id.* at 564. "[T]he correct evidentiary standard at the informal inquiry stage is some evidence—more than none or a scintilla…There must be "*some* evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id.* at 564–65 (quoting *Turner v. State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013).

A defendant is incompetent to stand trial if the defendant cannot "'rationally understand[] the proceedings against him or engag[e] rationally with counsel in the pursuit of his own best interests[.]'" *Id.* (quoting *Turner*, 422 S.W.3d at 691). An incompetent defendant "cannot be made to stand trial consistent with due process." *Id.*

11

Issue Two: Effective Assistance of Counsel – Competency Proceeding

The Sixth Amendment to the United States Constitution guarantees the accused "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. As with the privilege against self-incrimination, the Fourteenth Amendment incorporates this guarantee to the states. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."). Courts have interpreted this guarantee as requiring not only counsel, but "'effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)); *see also Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (adopting the *Strickland* standard). The *Strickland* court articulated the standard for ineffective assistance as follows:

> First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

"The proper standard of review for claims of ineffective assistance of counsel is whether, considering the totality of the representation, counsel's performance was ineffective." *Ex parte Lahood*, 401 S.W.3d 45, 49 (Tex. Crim. App. 2013) (citations omitted). We presume that counsel's "actions fell within the wide range of reasonable professional assistance." *Id.* at 50. (citations omitted). A lawyer is required to serve the client's interest but must also abide by the client's choices. *See Schriro v. Landrigan*, 550 U.S. 465, 469–73, 75–81 (2007) (discussing whether following the client's wishes can constitute ineffective assistance of counsel under *Strickland*); *see also Ex parte Barbee*, 616 S.W.3d 836, 842–43 (Tex. Crim. App. 2021) (confirming the principle that matters of trial strategy are the client's decisions).

Issue Three: Conflict of Interest

An attorney's conflict of interest may support a claim of ineffective assistance of counsel. *See Routier v. State*, 112 S.W.3d 554, 581 (Tex. Crim. App. 2003). We therefore review such a claim considering the totality of the representation, as dictated in *Lahood*, above. 401 S.W.3d at 49.

A conflict of interest exists if counsel must choose "between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (citing *James v. State*, 763 S.W.2d 776, 778-79 (Tex. Crim. App.

13

1989)). "A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980)).

## ANALYSIS

Issue One: Privilege Against Self-Incrimination

In his first issue, Fitzgerald contends that although he was in pretrial custody under bond, which no one disputes, the trial court required him to testify, thus violating his privilege against self-incrimination. *See* U.S. CONST. amend. V. In support of his argument that the State violated this privilege, Fitzgerald claims that "[n]o one read him his constitutional rights as required in *Miranda v. Arizona*[.]" Fitzgerald asks us to remand the case to the trial court for a retrospective competency examination and hearing, if one is feasible. We therefore construe this issue as encompassing not only the alleged *Miranda* violation, but the trial court's decision to find him competent to stand trial without conducting a competency hearing. *See* Tex. Code Crim. Proc. Ann. art. 46B.005(a).

We begin by addressing Fitzgerald's alleged *Miranda* violation. Fitzgerald complains on appeal that he should have been read his *Miranda* rights before giving testimony, with his attorney at his side, during the trial court's informal inquiry on

14

competence. The record does not show that Fitzgerald expressly invoked his right to remain silent at the competency inquiry hearing--as required by *Salinas*. *See* 570 U.S. at 181. Having failed to meet the *Salinas* standard, Fitzgerald did not enjoy the protection he now claims were violated. *See id.*

Although Fitzgerald's appellate argument implies that he should have been read his rights on the day of the informal inquiry, he has cited no authority supporting such a position. A trial court engaged in a court hearing months after an arrest is not an arm of the police seeking to use non-law-enforcement personnel to accomplish what law enforcement could not by way of a custodial interrogation in the context of the *Miranda* rule. *See Paez v. State*, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984) (citing *R.I. v. Innis*, 446 U.S. 291, 298 (1980) (*R.I. v. Innis* makes it clear that the term "custodial interrogation" encompasses only *police* practice)). Even if *Miranda* were to apply to this circumstance, absent coercion, there can be no violation of *Miranda* or the Fifth Amendment in any event. *See Oursbourn*, 259 S.W.3d at 170 (observing that *Miranda* addressed official overreaching, only). There is no evidence of coercion shown by this appellate record. The issue of failure to provide *Miranda* warnings is overruled.

Turning to Fitzgerald's competency to stand trial, our review of the record and proceedings at the informal inquiry into Fitzgerald's competency shows no evidence of Fitzgerald's alleged incompetence. The only evidence from which the

trial court could infer there was an issue as to Fitzgerald's competency was the motion for competency exam, filed on March 6, 2023 (two months before trial), which stated "a) Defendant has a history of mental health issue and has been prescribed medication for such conditions and is currently on medication but not taking it while in jail b) Defendant has a documented history of unstable, erratic and irrational behavior when he is not under prescribed medications…." This statement does not clearly state that Fitzgerald was suffering from a mental illness that rendered him incapable of "'rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests[]'" as required by *Boyett*. *See Boyett*, 545 S.W.3d at 565 (citation omitted). Although there is a vague reference to Fitzgerald having been on medication in the past for his "mental health," this does not rise to the level of establishing that Fitzgerald was suffering from a mental illness that prevented him from rationally communicating with his counsel and pursuing his own best interest. In addition, there was no evidence presented at the time of the hearing that any of these elements were present.

There being no evidence of Fitzgerald's incompetency to stand trial, the trial court did not err in finding Fitzgerald competent and foregoing a competency hearing. *See Ex parte Lahood*, 401 S.W.3d at 52–53 (discussing the informal inquiry and the procedure to follow if there is evidence of a defendant's incompetency); *see also* Tex. Code Crim. Proc. Ann. arts. 46B.004(c), 46B.005 (same).

16

We overrule both the self-incrimination and competency aspects of his initial appellate issue.

Issue Two: Effective Assistance of Counsel – Competency Proceedings

Fitzgerald next argues that he "was denied his Sixth Amendment right to effective assistance of counsel during the pre-trial competency proceedings." He bases his claim of ineffective assistance of counsel on his attorney's statement to the trial court that "[Fitzgerald] believes he doesn't need a competency evaluation, [] [h]e believes he does not need, he believes he's competent." He posits that counsel instead should have called witnesses to testify to Fitzgerald's alleged incompetency. Fitzgerald does not, however, demonstrate that such witnesses existed or that he was, in fact, incompetent to stand trial at the time of the informal inquiry. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011) ("The record is silent as to why trial counsel failed to object to the outcry-witness testimony. . . . Appellant has thus failed to meet his burden under the first prong of Strickland[.]"); *see also Robinson v. State*, 514 S.W.3d 816, 826 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (addressing the availability of witnesses to testify on the defendant's behalf in the context of supporting a motion for new trial); *Brown v. State*, No. 09-22-00066-CR, 2023 Tex. App. LEXIS 7592 at *10, (Tex. App.—Beaumont Oct. 4, 2023, no pet.) (mem. op., not designated for publication) (counsel was not ineffective by failing to (1) object to the extraneous offense evidence, (2) call any witnesses during

punishment, and (3) investigate or continue the trial to determine a viable defense because no evidence was presented by way of a motion for new trial establishing what witnesses would have provided testimony in support of the ineffectiveness claims).

Even if counsel's performance at the competency inquiry was substandard, it does not justify reversal if Fitzgerald was competent at that time, since prejudice to the defendant is a component of a successful argument that counsel was ineffective. *See Strickland,* 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Prejudice is the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Redmond v. State,* 30 S.W.3d 692, 698 (Tex. App.—Beaumont 2000, pet. ref'd).

Appellants alleging trial counsel's ineffective assistance may support that contention with affidavits or testimony from the attorney or other witnesses. In *Strickland*, for example, the appellant offered fourteen "affidavits from friends, neighbors, and relatives stating that they would have testified [on the appellant's behalf] if asked to do so." 466 U.S. at 675. The appellant also called his trial counsel as a witness. *Id.* at 678. The court denied relief, holding that the appellant had demonstrated neither prong of an ineffective counsel claim. *See id.* at 698–99.

In *Ex parte Niswanger*, the Court of Criminal Appeals also denied relief, noting that "the record here is relatively undeveloped." 335 S.W.3d 611, 616 (Tex. Crim. App. 2011). We face a similar problem in assessing the effectiveness of counsel's assistance at Fitzgerald's competency inquiry: the record explaining counsel's strategy is not only "relatively undeveloped," it is absent. Without evidence to the contrary, we presume that counsel's "actions fell within the wide range of reasonable professional assistance." *Ex parte Lahood,* 401 S.W.3d at 50. Since a claim of ineffective assistance of counsel "must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct[,]" and since this record lacks such evidence, we cannot decide this issue in Fitzgerald's favor. *See Niswanger*, 335 S.W.3d at 615. We overrule Fitzgerald's second issue.

Issue Three: Conflict of Interest

In issue three, Fitzgerald complains the trial court erred by failing to determine whether his trial counsel had a conflict of interest that disqualified him from effectively representing him.

During his competency inquiry, Fitzgerald stated that he filed a complaint against his attorney, and therefore believed he would not get a fair trial. Although Fitzgerald concedes that "the mere filing of a grievance against trial counsel, by itself, does not create a conflict of interest[,]" he contends that the rationale of

19

*Holloway v. Arkansas* required the trial court "to take adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant remedial action[.]" 435 U.S. 475, 484 (1978) ("We hold that the failure [to appoint an attorney for each defendant] deprived petitioners of the guarantee of 'assistance of counsel.'"); *see also Calloway v. State*, 699 S.W.2d 824, 829–31 (Tex. Crim. App. 1985) (representation of co-defendant).

In *Holloway*, the trial court appointed one attorney to represent three co-defendants with differing interests, all of whom chose to testify. 435 U.S. at 478–80. The trial court denied the request to appoint separate counsel for each defendant, and all were convicted of the offenses charged. *Id.* at 478–82. On appeal, the United States Supreme Court held "that the failure, in the face of the representations [of counsel's conflicts of interest] deprived petitioners of the guarantee of 'assistance of counsel.'" *Id.* at 484.

Here, as Fitzgerald observes, the trial court did not inquire further into the possible conflict he claims may have been created by the grievance he filed against his trial counsel. The trial court, however, did not need to do so, since "the filing of a civil action against a court appointed attorney is not a per se conflict of interest[.]" *Dunn v. State*, 819 S.W.2d 510, 519 (Tex. Crim. App. 1991) (referencing a professional liability suit). Fitzgerald, like Dunn, "never made any claim that there existed a conflict of interest which actually affected the adequacy of his

20

representation provided by [trial counsel]." *Id.* at 520 (citing *Cuyler*, 446 U.S. at 446). The applicable case authority also requires Fitzgerald to demonstrate prejudice to his defense, and he has failed to demonstrate prejudice. *See Strickland*, 466 U.S. at 692. Fitzgerald's statement that his attorney "was not acting in Appellant's best interest, but rather his own unknown interest[]" does not demonstrate that trial counsel was actively representing conflicting interests. On this record, we conclude the trial court did not err by failing to inquire into the grievance and its effect, if any, on trial counsel's ability to represent him. We overrule Fitzgerald's final issue.

## CONCLUSION

Having overruled all of Fitzgerald's issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on April 24, 2025
Opinion Delivered June 25, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

21